Commonwealth *v.* Sullivan, Appellant.

Argued November 17, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*David M. Kozloff*, for appellant.

*Grant E. Wesner*, Deputy District Attorney, with him *Robert L. VanHoove*, District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, January 19, 1973:

Appellant, John C. Sullivan, was tried by a jury in Berks County and convicted of murder in the second degree. After denial of motions for a new trial and in arrest of judgment appellant filed this appeal. Appellant alleges eight trial errors as a basis for relief. On this record we find four issues to be totally without merit and shall proceed to discuss the remaining four asserted errors.[1]

---

[1] The four issues we find to be totally without merit are: (1) that the trial court erred by misquoting the testimony of the defend-

Appellant's principal contention is that the trial court erred in defining voluntary manslaughter to the jury. In its charge the court instructed that voluntary manslaughter consists of an unlawful killing "without a direct intent to kill."[2] In *Commonwealth v. Jennings*, 442 Pa. 18, 23, 274 A. 2d 767, 769 (1971), this Court specifically held that this precise charge[3] was incorrect because voluntary manslaughter *could be* accompanied by a direct intent to kill. However, in *Jennings*, as here, defense counsel neither objected to nor requested correction of the erroneous charge before the jury retired to deliberate. In *Jennings*, we held that ". . . appellant's failure to take a specific exception to this por-

---

ant in the course of the charge to the jury; (2) that the trial court erred in admitting statements by the defendant before a corpus delicti was established; (3) that the trial court erred in overruling a demurrer to the evidence; and (4) that the jury's verdict was contrary to the law and the evidence.

[2] The relevant part of the trial court's charge was as follows:

"In voluntary manslaughter there may be a specific intention to inflict serious bodily harm or even to take life, for if there is adequate provocation and passion, the taking of life under such circumstances would be manslaughter and not murder. A non-malicious felonious killing with a specific intent either to kill or seriously injure is voluntary manslaughter.

"Since voluntary manslaughter is an offense embraced within the terms of the indictment in this case, you must know what is meant by that term. The crime of voluntary manslaughter is a lesser grade than that of murder. It consists in the unlawful killing of another without malice, express or implied. That means *without a direct intent to kill*, and without hardness of heart, or cruelty, or recklessness of consequence, or mind regardless of social duty. The act of killing must, of course, be voluntary; the very name of the crime implies that. Because voluntary manslaughter involves an intentional act, confusion sometimes exists in the jury's mind concerning the difference between that crime and the crime of first degree murder. If you bear in mind that manslaughter is never attended by legal malice, that is, by a *direct intent to kill* or by depravity of heart or cruelty or recklessness or consequences, you will not go astray." (Emphasis added.)

[3] See 4 Laub, Pennsylvania Trial Guide §618.5.

tion of the charge, as required by Pa. R. Crim. P. 1119 (b), forecloses our consideration of this issue on this appeal." *Commonwealth v. Jennings,* supra at 24, 274 A. 2d at 770.[4] Similarly appellant's failure, here, to object to the charge when given is fatal to his assertion of this claim on appeal.

Moreover, appellant cannot now successfully challenge the claimed error in the charge because the record discloses that as a matter of trial strategy appellant elected to seek an acquittal on the ground of self-defense and decided to forego consideration by the jury of a verdict of guilty of voluntary manslaughter. See *Commonwealth v. McGrogan,* 449 Pa. 584, 297 A. 2d 456 (1972). It is well settled that whether to object to the trial court's charge, to request clarification of the charge, or to request additional points for charge is one of the tactical decisions "within the exclusive province of counsel." *McGrogan,* supra at 586, 297 A. 2d at 457; see *United States ex rel. Green v. Rundle,* 452 F. 2d 232 (3d Cir. 1971); *United States v. McKenzie,* 409 F. 2d 983 (2d Cir. 1969). In *United States ex rel. Green v. Rundle,* supra at 237, the Third Circuit held that counsel's failure to object or to request a particular instruction was a "deliberate by-pass" necessarily imputed to the appellant. Here defense counsel's failure to object to an erroneous instruction on voluntary manslaughter presents the identical situation.

Appellant may be eligible for relief if it is determined that counsel's conduct of the trial lacked the quality of representation set forth in *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A. 2d 349 (1967). We said in *Washington,* supra at 604-05,

---

4 Pa. R. Crim. P. 1119(b) says: "No portions of the charge nor omissions therefrom may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate. All such objections shall be made beyond the hearing of the jury."

235 A. 2d at 352-53: "that our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests. The test is *not* whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had any reasonable basis." If a reasonable basis for counsel's trial strategy decision exists, that decision is imputed to the appellant. *Henry v. Mississippi,* 379 U.S. 443, 85 S. Ct. 564 (1965).

Applying the "trial strategy-reasonable basis" tests of *Washington* and *McGrogan* here we find the record discloses that counsel's trial strategy was to seek an acquittal on the basis of self-defense. All of defendant's evidence plus the testimony he elicited on cross-examination was consistent with the asserted claim for acquittal on self-defense. Moreover, in requesting points for charge, defense counsel submitted 12 points, all relating to self-defense. It is evident from this record that counsel's defense strategy was fashioned and patterned for acquittal based on self-defense. This was, indeed, the defense blueprint for trial and submission of its position to the jury.[5] Nowhere does the record reveal any attempt or plan to have the jury return an alternative verdict of voluntary manslaughter. Instead the defense trial record is a studied effort to avoid any deviation or compromise from its sole and primary strategic objective of obtaining an acquittal. The de-

---

[5] The trial court, in its charge to the jury stated, "The defendant in this case, as you have gathered from his testimony, and also from the argument of his counsel, is asserting a defense known as self-defense."

fense neither requested a manslaughter charge nor objected to the one the court gave—desiring not to have the manslaughter verdict presented or emphasized to the jury. It was the defense preference not to indicate to the court or the jury any defense interest in a manslaughter charge or verdict.

Viewing this defense strategy as it developed during the trial and prior to the verdict, it is clear that here, just as in *McGrogan*, "counsel sought to limit the jury's options to either finding first or second degree murder or outright acquittal." *McGrogan,* supra at 590, 297 A. 2d at 459. In *McGrogan,* we held that this identical trial strategy of limiting the jury's options was not an unreasonable one.[6] Similarly, here the record discloses a reasonable basis for counsel's trial decision, particularly in light of his objective of acquittal. Moreover, counsel's challenge to the manslaughter charge was first made in post-trial motions only after the verdict of second degree murder was returned and the possibility of an outright acquittal was foreclosed. We recently stressed in *McGrogan,* supra at 591, 297 A. 2d at 460, that ". . . as the Supreme Court appropriately noted in *Henry,* when for some reason counsel's deliberate trial strategy 'backfires,' the failure of the strategy cannot form the basis for relief upon review. Id. at 451, 85 S. Ct. at 569; . . ."

Appellant's second contention is that the trial court erred in permitting the Commonwealth to cross-examine him over his objection concerning certain events surrounding the stabbing. First, appellant contends

---

[6] There is a slight but indistinguishable difference between counsel's trial strategy in *McGrogan* and in the instant case. In *McGrogan* counsel failed to request an omitted voluntary manslaughter charge, while here counsel failed to object to an erroneous voluntary manslaughter charge. Both actions have the identical goal of seeking to limit the options available to the jury.

that eliciting on cross-examination that appellant had supplied the decedent with wine prior to the stabbing was unduly prejudicial and irrelevant. However, any error in admitting such testimony was corrected in the court's charge which instructed that furnishing wine to decedent did not constitute provocation of decedent's assault upon appellant.

Secondly, appellant argues that he did not place his character in issue. Therefore evidence elicited by the Commonwealth showing that appellant did not pay any rent to the owner of the dwelling where he lived and where the stabbing occurred was an impermissible attack on his character, because it implied he was a "freeloader." However, such cross-examination was not an attack on appellant's character or reputation. Appellant's theory of the case was self-defense. Thus, in order to show he had no duty to retreat when attacked by decedent, appellant sought to establish that he was in his own dwelling. The Commonwealth attempted to rebut this element of self-defense by proving that appellant paid no rent and thus was not in his own dwelling as he claimed at the time of the stabbing.

Appellant's third contention is that an inculpatory statement made prior to being advised of his *Miranda* rights should have been excluded from evidence. Appellant was confronted in his bedroom by three police officers and informed he was under arrest. Before any of the officers said anything further appellant stated, "I was going to give myself up in the morning anyhow." This statement appellant claims, should not have been admitted at trial over his objection. However, *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602 (1966), does not preclude the admission of such a volunteered statement. "Volunteered statements of any kind (are not barred by the Fifth Amendment) and their admissibility is not affected by our holding today." *Mi-*

*randa,* supra at 478, 86 S. Ct. at 1630. *Miranda* excludes only inculpatory or exculpatory statements resulting from "questioning" or "custodial interrogation." Here there was neither questioning, interrogation, nor any attempt to obtain a statement from appellant prior to his volunteered incriminating remark. Such volunteered statements, although incriminating, are nevertheless admissible. See *Miranda,* supra; *Commonwealth v. Hamilton,* 445 Pa. 292, 285 A. 2d 172 (1971); *Commonwealth v. Simala,* 434 Pa. 219, 252 A. 2d 575 (1969); *Commonwealth v. Moody,* 429 Pa. 39, 239 A. 2d 409 (1968); *Commonwealth v. Eperjesi,* 423 Pa. 455, 224 A. 2d 216 (1966). In *Simala,* supra at 226, 252 A. 2d at 578-79, we specifically said that "[t]he requirement of 'interrogation' is designed to permit the use by the prosecution of a confession that is given by an accused *without any prompting,* before warnings can be given." This is just such a situation.

Appellant finally contends that certain prejudicial photographs were admitted into evidence. These black and white photographs, depicted the room where the stabbing occurred, showing large amounts of blood on the furniture. Appellant argues that admission of the photographs was an abuse of the trial court's discretion because the pictures were "gruesome," "unsavory," and "could easily have been inflammatory to the jury." See *Commonwealth v. Powell,* 428 Pa. 275, 241 A. 2d 119 (1968).

In *Powell,* supra at 278-79, 241 A. 2d at 121, we said that "the proper test to be applied by a trial court in determining the admissibility of photographs in homicide cases is whether or not the photographs are of such essential evidentiary value that their need clearly outweighs the likelihood of inflaming the minds and passions of the jurors." Applying this test here, we

cannot say that the trial court abused its discretion in admitting the photographs. Where black and white photographs were employed to more clearly describe the area of a crime, the mere fact that blood was visible in the pictures does not necessarily make them inflammatory so that their admission constitutes an abuse of discretion. On this record the "likelihood of inflaming the minds and passions of the jurors" with the black and white photographs admitted here is virtually non-existent.

Judgment of sentence is affirmed.

---

CONCURRING OPINION BY MR. JUSTICE O'BRIEN:

While I concur with the view of the majority that appellant's trial strategy in this case constitutes a deliberate bypass of an objection to the erroneous instruction on voluntary manslaughter, I must once again express my views concerning the necessity for specific exception to charge. The majority states that relief was denied in *Commonwealth v. Jennings,* 442 Pa. 18, 274 A. 2d 767 (1971), because the appellant's failure to take a specific exception to the erroneous charge foreclosed our consideration of the issue on appeal, as mandated by Pa. R. Crim. P. 1119(b). While the quote from *Jennings* is accurate, it is clearly out of context. Relief was denied Jennings, not because of the asserted failure of compliance with Rule 1119(b), but rather because a plurality of the Court concluded that the asserted error did not rise to the level of basic and fundamental. *Jennings* went on to state specifically that Rule 1119(b) did not change the law of Pennsylvania and that the basic and fundamental error rule, as summarized in *Commonwealth v. Williams,* 432 Pa. 557, 248 A. 2d 301 (1968) still obtained in Pennsylvania.

My dissenting opinion in *Jennings* was joined by Justice EAGEN, and a majority of this Court was, there-

fore, in agreement that "Rule 1119(b), Pennsylvania Rules of Criminal Procedure, did not change the law enunciated by us relative to general and specific exceptions to charge," Justice EAGEN and I being in agreement with then-Chief Justice BELL, the author of the opinion of the Court, and Justice POMEROY, who joined in that opinion. My dissent in *Jennings* was based upon my view that the asserted erroneous charge constituted basic and fundamental error. The instant case is distinguishable on its facts, and the record here supports the conclusion that trial strategy dictated the action of counsel at trial, and it is for that reason, and that reason alone, that I concur in the result reached by the majority.

Mr. Justice EAGEN and Mr. Justice POMEROY join in this concurring opinion.