Commonwealth *v.* Allen, Appellant.

Submitted September 8, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Reggie B. Walton* and *John W. Packel*, Assistant Defenders, and *Benjamin Lerner*, Defender, for appellant.

*Stephen Levin, Mark Sendrow,* and *Steven H. Goldblatt*, Assistant District Attorneys, *Abraham J. Gafni*, Deputy District Attorney, and *F. Emmett Fitzpatrick*, District Attorney, for Commonwealth, appellee.

OPINION BY VAN DER VOORT, J., March 29, 1976:

The appellant, Harry Allen, files this direct appeal from his sentencing on various charges, including assault with intent to murder and aggravated robbery. He was convicted after jury trial on such charges arising out of an incident in Philadelphia in 1972, when a tailor was viciously assaulted and robbed by two men visiting his combination residence and place of business. Appellant was tried on these charges jointly with a co-defendant, and both were convicted. On appeal, Allen raises several claims of error.

First, appellant contends the trial court erred in refusing to ask potential jurors questions concerning possible prejudice against Blacks. It is alleged that defense counsel had specifically requested that such questions be asked. The record shows the following colloquy (with emphasis added where pertinent) relevant to this issue:

"THE COURT: No. 4, is there anything in the appearance of the accused which would bother you or upset you or which would keep you from being truly fair. Do you want that in?

DEFENSE COUNSEL: Yes. I have gotten some strange responses to that.

THE COURT: That's probably because you ask some strange questions, too.

DISTRICT ATTORNEY: I would object to that question, No. 4.

THE COURT: *Would you like to rephrase that and ask whether or not — would the fact that the accused is a black man, would that create any prejudice in your mind or preclude you from arriving at a fair and just verdict?*

DEFENSE COUNSEL: That which you say is an excellent question, *but mine is broader.*

THE COURT: I understand it is broader and more incorrect; *mine goes to the essence of the problem.*

DEFENSE COUNSEL: My point is that sometimes you get a person who says, 'I knew somebody who looked just like that guy.'

THE COURT: You can speculate from now until next Tuesday. I will rephrase it.

DEFENSE COUNSEL: *Could I suggest No. 16 of the Commonwealth's questions, do you know of any reason why you cannot sit as a fair-minded Juror in this case; I believe that would cover it.*

THE COURT: Well, I think that would. As a matter of fact, if there had been a little coordinating between you before, we wouldn't be repeating.

DEFENSE COUNSEL: You refuse No. 4 as stated, then I ask that you use the version you have suggested.

THE COURT: Would you be able to give these defendants the same fair trial you would any other defendants coming before the Court, whether they were white or black?

DISTRICT ATTORNEY: Right. Could I suggest to the Court, is there any reason why you couldn't give these defendants the same fair trial you give any other defendant coming into the courtroom.

THE COURT: *Would you be able to give these defendants the same fair trial as any others?*

DEFENSE COUNSEL: You didn't put anything in because of their race.

DISTRICT ATTORNEY: I would object to it, I think it is bringing up a point that might not be in their minds.

DEFENSE COUNSEL: There may be a person will candidly tell you 'I can't help the way I was brought up, I have something against black people.' I have had that answer given to me a number of times.

THE COURT: I have only had it once and I have been around a lot longer.

DEFENSE COUNSEL: *It is Your Honor's version that I am now adopting."*

The record shows the trial judge thereafter asked the following questions of prospective jurors:

"If there should be any doubt in your mind, could you render a verdict based on the evidence that you hear in court, that evidence alone, *without prejudice, bias or sympathy?* Is there anyone who couldn't do that among the first twelve?" (Emphasis added).
and

"... would you be able, members of the jury, to give these two defendants the same fair trial as any other defendants that might be before this Court? Is there anyone that couldn't give them the same fair trial as any other person charged with a crime before this Court..."

From a review of the above-quoted colloquy, it appears that appellant has waived his right to raise the first issue. Initially, defense counsel did not request a question dealing with racial prejudice. Subsequently, the appellant declined to accept the court's proposed question

which dealt with racial prejudice. Finally, the defense indicated its adoption of the court's proposed compromise question, which the court then proposed to members of the prospective jury panel. Under such circumstances, appellant must be deemed to have waived any objection to the lower court's failure to ask a specific question on *racial* prejudice. See *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974); *Commonwealth v. Reid*, 458 Pa. 357, 326 A.2d 267 (1974) (see footnote 1); *Commonwealth v. Agie*, 449 Pa. 187, 296 A.2d 741 (1972); *Commonwealth v. Little*, 449 Pa. 28, 295 A.2d 287 (1972); *Commonwealth v. Donovan*, 447 Pa. 450, 291 A.2d 116 (1972).

Next appellant argues that a pre-trial line-up identification made by the victim should have been suppressed. In this regard, he first contends that the line-up occurred after an allegedly illegal arrest, made without probable cause, and second, he claims such line-up took place during a period of impermissible delay[1] between arrest and arraignment. We cannot agree that reversal is mandated by either of these claims.

First, we believe that the record establishes more than sufficient probable cause for appellant's arrest. Appellant and a co-defendant found themselves in police custody as a result of an altercation in a restaurant. There is no claim by appellant that there was a lack of probable cause to bring about this custody. One of the officers present at the station to which appellant was brought knew that those involved in the robbery of the tailor, from the victim's description, were Black and "... approximately five eight to five ten, one hundred sixty or sixty-five pounds, medium complexion, close cut hair. No. 2 man was approximately five-six, dark complexion, close cut hair." The appellant and his companion from the restaurant altercation fit these descriptions. Moreover, the victim, who was familiar with one of his

---

1. See Rule 130 of the Pennsylvania Rules of Criminal Procedure (formerly Rule 118) and *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972).

assailants,[2] told police he knew one person by the first name "Harry" — this was the same name used by one of the robbers.[3] The same "Harry" had given the tailor the home address of "44 Clivedan Street", which turned out to be a non-existent address. In filling out routine forms following the restaurant altercation, the appellant, Harry Allen, gave an address in the forty four hundred block of North Cleveland Street. The officer, knowing all of these facts, and having his suspicion aroused, asked the appellant what he did for a living. Allen replied that he drove a cookie truck. The victim had advised police that the robber named Harry was known to him as one who drove a cookie truck. When the officer learned this last fact, he informed the appellant he was under arrest and gave him appropriate warnings.

Probable cause exists if the arresting officer is possessed of facts and circumstances which would warrant a man of reasonable caution to believe the arrested person had committed a crime. *Commonwealth v. Sharpe*, 449 Pa. 35, 296 A.2d 519 (1972). The recitation of record facts set forth above convinces us that probable cause existed to arrest appellant. His initial detention for the restaurant altercation was not challenged, and it is recognized that police can ask questions to gather routine personal data, such as name, address, and occupation in such circumstances. *Commonwealth v. Youngblood*, 453 Pa. 225, 307 A.2d 922 (1973). No questions during this time were directed to appellant regarding the robbery and assault of the tailor.[4]

---

2. More will be discussed of this fact later in this Opinion.

3. The visit of the robbers was preceded by a phone call to set up an appointment for a suit to be made. One of the visitors used the name "Harry" in discussions with the victim just prior to assaulting and robbing him.

4. Moreover, even if it were determined that the arrest in this case was not supported by probable cause, the line-up identification need not be suppressed. See *Commonwealth v. Richards*, 458 Pa. 455,

The appellant has also raised the argument of impermissible delay between arrest and arraignment. Relying upon *Commonwealth v. Futch, supra,* he contends that an alleged delay of thirty hours should have caused all identification to be suppressed. Under the circumstances of this case, we need not analyze whether or not there was impermissible delay, [5] since we agree with the lower court's conclusion that the victim's identification at trial clearly had an origin independent of the pre-arraignment line-up. The victim knew the appellant by sight before the crime; he also knew his assailant by the first name "Harry". Prior to the attack, the victim saw and talked to the robbers, including the appellant, who used the name, "Harry", for a period of approximately 15 minutes in his well-lighted premises. He testified positively at trial that his identification of the appellant was based upon his observations of him at the time of the crime and his familiarity with him prior to the crime. See *Commonwealth v. Hancock,* 455 Pa. 583, 317 A.2d 588 (1974); *Commonwealth v. Futch, supra.* We therefore find appellant's identification contentions to be without merit.

Next, appellant contends that the lower court erred in permitting the jury to examine blood-stained scissors, which were used in the assault, and photos depicting the scene of the crime, wherein blood stains were apparent. The trial judge is normally accorded discretion in permitting photographs (of a crime scene) or instruments of a crime to be introduced in a criminal prosecution. *Commonwealth v. Novak,* 395 Pa. 199, 150 A.2d 102 (1959); *Commonwealth v. Ballem,* 386 Pa. 20, 123 A.2d 728, *cert denied,* 352 U.S. 932 (1956); *Commonwealth v.*

---

327 A.2d 63 (1974); *Commonwealth v. Garvin,* 448 Pa. 258, 293 A.2d 33 (1972), and the discussion of the in-court identification in this Opinion.

5. The record arguably supports contentions that appellant himself contributed to the causes for delay. Moreover, he was represented by counsel at the line-up in issue, so *Futch, supra,* would not be applicable.

*Tritch,* 162 Pa. Superior Ct. 443, 58 A.2d 364 (1948). In any case, the trial court must apply a balancing test as to the value of the evidence offered as against its tendency to unduly inflame the jury's considerations. *Commonwealth v. Powell,* 428 Pa. 275, 241 A.2d 119 (1968). Even gruesome exhibits are admissible in proper circumstances. *Commonwealth v. Brueckner,* 458 Pa. 39, 326 A.2d 403 (1974); *Commonwealth v. Ballem, supra.* In the instant case, we find it pertinent that the pictures were in black and white, rather than color. See *Commonwealth v. Sullivan,* 450 Pa. 273, 299 A.2d 608 (1973). Also, the record shows that the lower court properly cautioned the jury to avoid prejudice against the defendants because of these exhibits. Based upon all of the above, we cannot find that the lower court abused its discretion in the circumstances here present, where the evidence in question clearly helped the jury understand the prosecution's case, and buttressed the testimony of the victim and other Commonwealth witnesses who were subjected to rigorous cross-examination in the normally expected defense attempts to weaken testimonial credibility.

Last, appellant claims that the lower court erred in not declaring a mistrial when an officer testified that the co-defendant stated he worked on a "Muslim Truck" with the appellant. In his argument, appellant contends that any reference to "Muslims" was highly prejudicial based upon the theory that White jurors would automatically be turned against members of the Nation of Islam or Black Muslim religion. Based upon several factors, we cannot find ourselves in agreement with appellant's rationale.

The record shows that the officer made his statement in response to a Commonwealth question as to the statement of occupation given to police by the co-defendant. Defense counsel requested and was granted an immediate hearing in Chambers on the motion for

mistrial.[6] The trial judge, who had followed the testimony, expressed the belief that the officer had said "amusement" truck rather than "Muslim" truck. While refusing the request for mistrial, he barred any future reference to the word "Muslim." Information pertaining to the defendants' religions does not appear at any other point in the record of this case, which encompasses several days of trial. The District Attorney testified, at a hearing on post-trial motions, that he had no knowledge that the single reference to Muslims would be made.

We must be judicious in avoiding situations wherein the religious preference of any defendant (or any other witness or party to civil or criminal litigation) is used, in any way, against him at trial. See the Act of April 23, 1909, P.L. 140, §3, 28 P.S. §313, which prohibits questions regarding religious beliefs in any attempt to attack competency or credibility. In certain limited circumstances,[7] a person's religious practices may be related and relevant to the litigation, but in all other circumstances, this issue may not be a part of the considerations of the finders of fact. In the instant case, however, we cannot ignore the isolated nature of the single reference to the word "Muslim." Nor can we ignore the lower court's belief, expressed just after the statement was made, that the witness had said "amusement." Every unwise or irrelevant remark does not compel the granting of a new trial. *Commonwealth v. Riley*, 459 Pa. 42, 326 A.2d 400 (1974); *Commonwealth v. Goosby*, 450 Pa. 609, 301 A.2d 673 (1973). This is especially true where the prejudicial remark is so isolated in a long trial record. Last, we are not convinced that a jury would render an unfair verdict merely

---

6. While he raised several grounds for mistrial at that time, he only raises the issue of the *prejudicial nature* of the "Muslim" information on this appeal.

7. See for example *McKim v. Philadelphia Transportation Co.*, 364 Pa. 237, 72 A.2d 122 (1950).

because it was aware that a defendant, whose own religion was undisclosed, worked on a truck operated by a religious sect, even if we were to accept the premise that the particular sect was controversial to certain segments of the citizenry. Based upon all of these considerations, we dismiss the appellant's final claim of error.

Affirmed.

HOFFMAN, J., concurs in the result.