407 A.2d 860

**COMMONWEALTH of Pennsylvania**

v.

**Richard MILLER, Appellant.**

Superior Court of Pennsylvania.

Submitted March 20, 1979.

Decided July 6, 1979.

Petition for Allowance of Appeal Denied Jan. 16, 1980.

involved, appellee's right to claim the privilege thus is not an issue on this appeal.

126

Michael A. Seidman, Philadelphia, for appellant.

Neil Kitrosser, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before VAN der VOORT, HESTER and WIEAND, JJ.

HESTER, Judge:

Appellant Richard Miller was convicted by a jury in the Court of Common Pleas of Philadelphia County of charges of forcible rape, burglary, aggravated robbery, assault and battery, and aggravated assault and battery.[1]  Following denial of post-trial motions, he was sentenced to an aggregate term of twenty to forty years imprisonment.  On this direct appeal, appellant assigns as error various rulings and actions in the court below.  We find his contentions to be without merit and will therefore affirm.

1. Former title 18 P.S. §§ 4721, 4901, 4705, 4708, 4709 respectively. In addition to the foregoing, appellant was also charged with assault with intent to kill, § 4710.  However, a demurrer was sustained as to that count.

Facts adduced at trial established the following: In the early morning hours of November 1, 1972, the complainant was asleep in bed on the second floor of her three story dwelling in South Philadelphia. She awoke suddenly to find two young black males standing by her bed, one on each side. The intruder on her right began beating her upon her head with a hammer while the individual on her left, later identified to be the appellant, climbed on top of her and raped her. Appellant then cut the victim's face with a knife and demanded money, while the other individual proceeded to rape her. The young woman produced her pocketbook from which the perpetrators stole between $35.00 and $40.00. Following this, appellant and his confederate fled through the back door while the victim called the police. Appellant was arrested, charged, and confessed to these crimes approximately three weeks later on November 20, 1972. His nephew, Clarence Miller, was identified as the other rapist.

Appellant was originally tried and convicted of these crimes on September 25, 1973, by a jury. On appeal, this Court remanded, allowing appellant to file post-verdict motions *nunc pro tunc*. *Commonwealth v. Miller*, 232 Pa.Super. 171, 335 A.2d 528 (1975). Following this, the trial court granted him a new trial on February 19, 1976, finding appellant had not executed a valid waiver of counsel in the first trial. The Commonwealth appealed the granting of a new trial and we affirmed per curiam. *Commonwealth v. Miller*, 244 Pa.Super. 578, 371 A.2d 860 (1976). It is from the judgment of sentence imposed after the retrial that the present appeal is taken.

Appellant first contends his retrial did not begin within the time required under Pa.R.Crim.P. 1100 and that he must be discharged. Following Judge Cain's granting of a new trial on February 19, 1976, and while the Commonwealth's appeal therefrom was pending in this Court, the Commonwealth filed a Rule 1100(c) petition in the trial court seeking an extension of time for the commencement of the retrial. This petition was granted April 6, 1976, the court extending the rundate under Rule 1100 to thirty days following this

Court's decision, should this Court affirm the February 19, 1976 order. Our decision so affirming was handed down December 20, 1976. On the thirty-first day following, trial not having commenced, appellant filed a Rule 1100(f) application seeking dismissal of all charges with prejudice. The court denied this request, noting Rule 1100(e) had since been amended to allow retrial within 120 days of an appellate court affirmance of an order of a trial court granting a new trial. Under the amended rule, the Commonwealth still had some 89 days within which to try appellant, thus rendering the Rule 1100(f) request premature. We think this construction of the amendment by the lower court was correct.

When the lower court granted the Commonwealth's Rule 1100(e) extension petition to 30 days following disposition of the Commonwealth's appeal, there was no provision in Rule 1100 for a prompt trial deadline after an appellate affirmance of a trial court order awarding a new trial. Rule 1100(e) simply provided (as of April 6, 1976):

A new trial shall commence within a period of one hundred and twenty (120) days after the entry of an order by the trial court or an appellate court granting a new trial.

On June 28, 1976, the Rule was amended to its present form:

(2) When an appellate court has granted a new trial, or has affirmed an order of a trial court granting a new trial, the new trial shall commence within one hundred and twenty (120) days after the appellate court remands the record to the trial court. The date of remand shall be the date as it appears in the appellate court docket.

As amended June 28, 1976; effective July 1, 1976 (emphasis added). Appellant contends the Rule as amended cannot apply to his time for retrial since the lower court had already afforded the prosecution only 30 days in which to begin trial following the Superior Court's decision. It is this 30 day time limit he urges us to employ, and not the 120 day deadline of amended Rule 1100(e).

To determine the applicability of Rule 1100(e) to retrial situations, the Supreme Court has consistently focused on the date a new trial is granted, even though the original

proceeding was commenced before the Rule itself was promulgated. In *Commonwealth v. Woods*, 461 Pa. 255, 336 A.2d 273 (1975), trial began prior to the adoption of Rule 1100, but a retrial was ordered November 26, 1973, nearly five months after Rule 1100 became effective. The Court held the then 90 day time limit for retrial of Rule 1100(e) was fully applicable: "Because it is the entry of an order granting a new trial which starts the 90 day time limit in paragraph (e) running, that paragraph is applicable to any court case in which such an order is entered after June 8, 1973, the date of adoption of Rule 1100." Id., 461 Pa. at 258, 336 A.2d at 274. Accord, *Commonwealth v. Brown*, 470 Pa. 274, 368 A.2d 626 (1977); *Commonwealth v. White*, 469 Pa. 460, 366 A.2d 880 (1976).

Similarly, the 1976 amendments to Rule 1100(e) specifically state they are effective July 1, 1976. Since it is the remand of the record following appellate court action which starts the 120 day time limit of Rule 1100(e)(2), that paragraph is applicable to any court case in which such a remand is effected following July 1, 1976. Instantly, the date of remand following our December 20, 1976 per curiam order is January 20, 1977. Thus, the Commonwealth had 120 days, or until May 20, 1977 to commence trial. The lower court, by its April 6, 1976 30 day order, was merely responding to an ambiguity in former Rule 1100(e) as to its applicability to an appellate affirmance of an order granting defendant a new trial. When amended Rule 1100(e) took effect later that year, its 120 day provision became the law of the Commonwealth, superseding the 30 day limitation of the April 6 order. The trial court thus correctly recognized that it was without power to grant the Commonwealth *less* time to commence trial than that provided by Rule 1100(e). Since trial was timely begun, the court properly refused appellant's Rule 1100(f) application for dismissal.

Appellant next argues his arrest was the fruit of the unlawful arrest and interrogation of his nephew, Clarence Miller, and that the suppression court improperly restricted his cross-examination into the arrest of Clarence. Detective

Leon Wright of the Philadelphia Police Department began his investigation into the instant crimes with the interview of one Kenneth Lindsay, an acquaintance of appellant. According to Lindsay, appellant had admitted that he and his nephew Clarence had broken into "a white lady's" house on November 1, 1972. Armed with this information, the police arrested Clarence Miller and, upon questioning by Detective Wright, Clarence implicated himself and appellant in the rape and robbery of the complainant herein. Detective Wright then began his search for appellant. In the meantime, he had procured an arrest warrant for appellant charging him with the rape of one Bannie Wright, occurring November 3, 1972. On November 20, 1972, Detective Wright gave this warrant to Officer William Holt of the Abington Township Police Department, who served appellant with the warrant and arrested him. At the pre-trial suppression hearing, appellant contended his arrest was the fruit of the unlawful arrest and interrogation of Clarence Miller. The court sustained the Commonwealth's objection to this line of inquiry, noting appellant had no standing to challenge any illegality as to his nephew. We need not decide the standing issue, for the record is clear the arrest of appellant was not in any way premised on the custody and confession of Clarence Miller. Appellant was arrested on warrant for the rape of Bannie Wright and not for the rape of the instant complainant. Once lawfully in custody for this unrelated charge, officers could properly question him concerning the November 1 incident. See, e. g. *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975).

Appellant next avers the court erred in admitting into evidence prejudicial and inflammatory photographs of the crime scene. Preliminarily, we note the trial judge is normally accorded discretion in permitting photographs of the crime scene to be shown the jury. *Commonwealth v. Novak*, 395 Pa. 199, 150 A.2d 102 (1959); *Commonwealth v. Allen*, 239 Pa.Super. 83, 361 A.2d 393 (1976). In determining the admissibility of potentially inflammatory photographs, the court must apply a balancing test of whether or not the

photos are of such essential evidentiary value that their need clearly outweighs the likelihood of inflaming the minds and passions of the jurors. *Commonwealth v. Terry*, 482 Pa. 564, 394 A.2d 466 (1978); *Commonwealth v. Hilton*, 461 Pa. 93, 334 A.2d 648 (1975); *Commonwealth v. Garrison*, 459 Pa. 664, 331 A.2d 186 (1975). If the court deems the photographs not to be inflammatory, then they are admissible as any evidentiary items, subject, of course, to the qualification of relevance. *Commonwealth v. Batty*, 482 Pa. 172, 393 A.2d 435 (1978); *Commonwealth v. Schroth*, 479 Pa. 485, 388 A.2d 1034 (1978).

In the instant case, five 8″ × 10″ black and white glossy photographs were introduced as part of the Commonwealth's case. Two of these portray the victim's bed, depicting blood on the sheets and pillows, and showing the hammer used in the beating. Two others display a broken window in the front of the young woman's home, the alleged mode of entry that night. The final picture is a view of the living room floor, just under the broken window, depicting shattered glass and a rock. We cannot say there was an abuse of discretion in admitting these photos. The mere fact of blood splattered on furniture in black and white photographs does not render them inflammatory. *Commonwealth v. Sullivan*, 450 Pa. 273, 299 A.2d 608 (1973). Further, the potential for inflaming the minds of the jurors is greatly diminished where, as here, the photos merely depict a crime scene, as opposed to photographs exhibiting a bruised and bloodied crime victim. Compare, *Terry*, supra, (photos showing burned floors, walls, and steps and no bodies, held, not inflammatory); *Allen*, supra, (black and white photos depicting bloodied scene of crime, held, not inflammatory); *Sullivan*, supra, (same, black and white photos), with *Commonwealth v. Garrison*, supra, (color slides of homicide victim showing lacerated head, bone fragments, brain tissue, and blood, held inflammatory); *Commonwealth v. Scaramuzzino*, 455 Pa. 378, 317 A.2d 225 (1974) (color slides showing heart removed from deceased and wounded portions of torso held, inflammatory). See also, *Common-*

*wealth v. Romanoff*, 258 Pa.Super. 452, 392 A.2d 881 (1978). Hence, we do not find these photographs inflammatory and they were clearly relevant since they aided the jury in understanding the Commonwealth's case and buttressed the testimony of the victim and police officers. *Allen*, supra. There was no error.

Appellant next assigns as error testimony of the victim relating to the jury her physical condition at time of trial. In describing the extent and magnitude of her injuries, she testified, "I'm still having problems with dizziness, headaches, staggering sometimes when I'm walking, still going to the doctor's." N.T. 115. Appellant contends the evidence was neither material nor relevant to the issues before the jury. We do not agree. Determination of the relevancy of proferred evidence at trial requires a two-step analysis:

> It must be determined first if the inference sought to be raised by the evidence bears upon a matter in issue in the case and, second, whether the evidence "renders the desired inference more probable than it would be without evidence."

*Commonwealth v. Scott*, 480 Pa. 50, 389 A.2d 79 (1978); *Commonwealth v. Kichline*, 468 Pa. 265, 361 A.2d 282 (1976); *Commonwealth v. Walzack*, 468 Pa. 210, 360 A.2d 914 (1976); McCormick, Evidence, § 185 (2d ed., Cleary, 1972). Additionally, the admission or exclusion of this type of evidence ordinarily rests with the sound discretion of the trial court. *Commonwealth v. Scott*, 469 Pa. 258, 365 A.2d 140 (1976); *Commonwealth v. Kramer*, 247 Pa.Super. 1, 371 A.2d 1008 (1977).

Appellant was charged with, inter alia, *forcible* rape, requiring proof of "serious bodily injury", 18 P.S. § 4721; with *aggravated* assault and battery, requiring the Commonwealth to prove malicious infliction of "grievous bodily harm", § 4709; and with assault with intent to kill, requiring proof of "bodily injury, dangerous to life", § 4710. The prosecution was obligated to establish these elements beyond a reasonable doubt. Hence, any evidence which bore

on the severity of the injuries suffered by the victim was clearly relevant. If the complainant was still hampered by wounds inflicted five years before trial, the jury could properly infer that the statutory requisites of the crimes had been satisfied. There was no error in admission of the testimony.

Appellant next argues the court erred in allowing testimony concerning actions of the second assailant when there was no conspiracy charged. The only objection registered at trial by defense counsel embracing this issue occurred when the complainant testified, "[W]hen he [appellant], was through using me, then the other one did the same thing", N.T. 103, referring to the act of rape. We think, however, that appellant suffered no undue prejudice by the remark. The court in its charge specifically limited appellant's criminal liability to his own actions and at no time was the jury told appellant could be responsible for the actions of another person. Moreover, we think this limited reference to the second assailant's conduct was simply a thread in the victim's description of the entire ordeal, "an inextricable, integral part of this tragedy's entire ambience." Opinion of lower court at 9. An attempt to omit *all* references to the actions of appellant's confederate, when the evidence clearly shows two burglars were present, would have been misleading and confusing to the jury. We find no error.

Appellant complains he was denied his right to cross-examine the circumstances surrounding his arrest since he was arrested for an unrelated crime. As we have already noted, appellant was arrested on warrant for the rape of one Bannie Wright. During trial, the arresting officers merely stated they had "a warrant" when they placed appellant in custody. Appellant contends that if he had tried to cross-examine the officers about the particular circumstances of the arrest, it would have been necessary to reveal the contents of the warrant, thus bringing before the jury the fact that he had been charged with other crimes. Whatever the merits of such a position, any possible undue prejudice was cured when the defense opened its case. On appellant's

insistence, the arrest warrant itself was read and admitted into evidence through Detective Wright. N.T. 220–1; Defendant's Exhibit No. 1.[2] Thus, any "circumstances of the arrest" which may have been hidden from the jury during the Commonwealth's case were fully open to exploration by appellant during his case in chief. He cannot now complain his rights were compromised.

■ Appellant contends he was prejudiced by Detective Wright's use of the word "alias" during direct examination. In introducing appellant's confession to the crimes therein, the Detective stated: "This is a 'Statement of Richard Miller, 18 years of age' with an alias of David Miller." Counsel immediately objected to the reference to "alias" arguing it implied appellant was involved with other crimes. However, the record shows there was a discrepancy between the Philadelphia and Abington Township police departments as to appellant's correct first name. N.T. 146. Moreover, appellant signed his confession as "David Miller", N.T. 171, 173, 178, even though he was identified at trial to be "Richard Miller". N.T. 145, 164. Hence, the passing reference to "alias" merely resolved any confusion on the jury's part as to the identity of the individual before them. See, *Commonwealth v. Rodgers*, 472 Pa. 435, 372 A.2d 771 (1977).

■ Finally, appellant assigns as error the court's failure to properly charge the jury on reasonable doubt. The court stated: "A reasonable doubt is not a hesitation, because you should hesitate before all of the evidence." N.T. 260. This isolated remark does not, as appellant suggests, negate the "approved" instruction of *Commonwealth v. Kluska*, 333 Pa. 65, 3 A.2d 398 (1939), that, "[A] reasonable doubt [is] one that would cause [the jury] to hesitate to act in any of the important affairs of their own lives." See also,

2. This action was preceded by a lengthy colloquy among appellant, the court, the district attorney, and defense counsel. N.T. 207–219. Appellant was repeatedly advised by the court and his counsel of the prejudicial nature of such testimony, but he insisted the Bannie Wright warrant be introduced as part of his case in chief. In addition, appellant induced Detective Wright to read to the jury appellant's confession to the Bannie Wright rape. N.T. 222–225.

*Commonwealth v. Gartner,* 475 Pa. 512, 381 A.2d 114 (1977); *Commonwealth v. Young,* 456 Pa. 102, 317 A.2d 258 (1974); *Commonwealth v. Donough,* 377 Pa. 46, 103 A.2d 694 (1954). Reading the charge as a whole, *Commonwealth v. Lesher,* 473 Pa. 141, 373 A.2d 1088 (1977), we find it contained the ingredients essential to a complete, accurate, and proper construction of reasonable doubt. *Commonwealth v. Cartagena,* 482 Pa. 6, 393 A.2d 350 (1978). "Error cannot be predicated on isolated excerpts of the charge. It is the general effect of the charge that controls." *Commonwealth v. Woodward,* 483 Pa. 1, 4, 394 A.2d 508, 510 (1978). Since the instructions were otherwise sufficient to define reasonable doubt, there was no reversible error in the quoted portion.[3]

Judgment of sentence affirmed.

---

**3.** Appellant posits two other errors in the charge to the jury: 1) that the court factually misled the jury at one point; and 2) that there was no charge on appellant's constitutional right not to testify. We have examined these contentions and find them without merit.