439 A.2d 142

**COMMONWEALTH of Pennsylvania,**

v.

**Robert HANKINS, Appellant.**

Superior Court of Pennsylvania.

Submitted April 22, 1981.

Filed Dec. 18, 1981.

Petition for Allowance of Appeal Denied March 26, 1982.

342

Louis Lipschitz, Philadelphia, for appellant.

Gaele McLaughlin Barthold, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before WICKERSHAM, MONTEMURO and WATKINS, JJ.

MONTEMURO, Judge:

This is an appeal from an order denying relief under the Post-Conviction Hearing Act.[1] Appellant's sole contention on appeal is that trial counsel was ineffective for failing to

1. Act of January 25, 1966, P.L. (1965) 1580, 19 P.S. § 1180–1, et seq.

file a pre-trial motion to suppress a statement made by appellant to the police prior to receiving his *Miranda* warnings. We find no merit in appellant's argument and accordingly affirm the order of the court below.

On October 20, 1975, appellant was tried with two co-defendants in a non-jury trial and convicted of robbery,[2] possession of an instrument of crime,[3] carrying a firearm in a public place,[4] carrying a firearm without a license,[5] and criminal conspiracy.[6] Post-verdict motions were denied and appellant was sentenced to five (5) to ten (10) years imprisonment for robbery. Sentence was suspended on the other charges. Appellant filed a direct appeal to the Superior Court which affirmed his conviction. *Commonwealth v. Hankins*, 251 Pa.Super. 137, 380 A.2d 415 (1977). The Supreme Court denied allocatur on April 4, 1978.

The facts of the case are as follows:

On July 14, 1975, police responded to a radio call that three black males with shotguns were seen on the corner of 6th Street and Indiana Avenue in Philadelphia. Upon arriving there, the police found an armed robbery in progress at Herb's Bar. Shortly before, three black males had entered Herb's Bar. Brandishing weapons, the robbers told the people in the bar that this was a "stick up" and to get on the floor. The men then took cash from the bar owner and his patrons. Before the robbers could leave, the police arrived.

When the police tried to enter the premises, they found the front door was blocked, but they were able to see that the robbery victims inside were lying on the floor, including a woman and a baby. One officer went to the rear of the

**2.** 18 Pa. C.S.A. 3701.

**3.** 18 Pa. C.S.A. 907.

**4.** 18 Pa. C.S.A. 6108.

**5.** 18 Pa. C.S.A. 6106.

**6.** 18 Pa. C.S.A. 903.

building where he observed appellant "peeping" out a window from inside the bar. When the police announced their presence, appellant came out with his hands raised and told the police that the other two men were still inside the bar.

■ It is this statement to the police that appellant contends should have been suppressed. The admissibility of this evidence is controlled by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and its progeny. *Miranda* prohibits the introduction of statements by the defendant which are the product of custodial interrogation unless proper procedural safeguards are effected to secure the privilege against self-incrimination. The prophylactic warnings required by the rule are the result of the recognition that custodial interrogation is inherently coercive. An interpretation of *Miranda* should, therefore, be consistent with the underlying purpose of preventing coercive police conduct in the elicitation of incriminating statements by a defendant.

■ In the case before us, appellant came out of the bar with his hands up. It is disputed whether handcuffs were placed on him before or after the question was addressed to him.[7] However, we conclude from the testimony that his freedom of action was restrained and he was therefore in custody. Nevertheless, custody alone does not necessitate the reading of *Miranda* warnings. *Miranda* has not been interpreted to exclude responses to *all* questions. (Emphasis

7. The officer who actually saw appellant peeping out from a window in the rear of the bar and who was there when appellant came out with his hands over his head, testified that appellant volunteered the statement sought to be suppressed. The fellow officer who was not there when appellant exited from the bar, testified that the statement sought to be suppressed was a response to the police officer's question "where are the others?". The testimony of the officers also varied as to when the handcuffs were placed on appellant. The testimony of the officer who was directly at the scene is certainly more credible. However, at the appellate level, we may not decide questions of credibility. Therefore, for the purpose of this opinion, we will assume that appellant's statement was a response to a question posed by the officer and that appellant was in custody at the time of that response.

added). The Supreme Court of Pennsylvania has stated: "It is simply not custody plus 'questioning' as such which calls for *Miranda* safe-guards, but custody plus police conduct calculated to, expected to, or likely to, evoke admission." *Commonwealth v. Simala*, 434 Pa. 219, 226, 252 A.2d 575, 578 (1969). Consistent with this interpretation, Pennsylvania Courts have allowed responses for routine information. See *Commonwealth v. Yount*, 455 Pa. 303, 314 A.2d 242 (1974). (Defendant walked into a police station and confesses. Police could ask clarifying questions without giving warnings). See also *Commonwealth v. Allen*, 239 Pa.Super. 83, 361 A.2d 393 (1976) (Police may ask questions to gather routine personal data).

■ The case before us does not exhibit the characteristics of these two exceptions. Yet, we regard this factual situation as one in which the necessity to give *Miranda* warnings is far less compelling. Under the circumstances of this case, where the police came upon a robbery in progress, where they saw patrons, including a woman and a baby, lying on the floor, where they knew that the robbers were three black males with guns, and where appellant, after peeping out a window from the rear of the bar, came out with his hands over his head, it would be absurd to conclude that the police asked the question "where are the others?" for the purpose of eliciting evidence that appellant had committed a crime.

■ Where a question is necessary to insure the safety of bystanders or police officers, and time is a crucial factor, we feel that there is a sufficient state interest to override the necessity of reading *Miranda* warnings.[8] As was the case in *Commonwealth v. Yount*, supra, on the record it cannot be said that the challenged police inquiry was conduct calculat-

**8.** In *Harryman v. Estelle*, 616 F.2d 870. (5th Cir. 1980) cert. denied 449 U.S. 860, 101 S.Ct. 161, 66 L.Ed.2d 76 (1980). The Court stated that where there is a sufficient compelling noninvestigatory purpose for asking a question, it will be allowed.

ed to, expected to, or likely to, elicit an incriminating response. Our rationale in this case is similar to that used in *United States v. Castellana*, 500 F.2d 325 (5th Cir. 1974). In that case, F.B.I. agents, pursuant to a valid search warrant broke into a gambling establishment. One of the agents, who was assigned to search Castellana, took him into a back room but did not arrest him. Castellana then consented to a search of his person. Another agent then asked Castellana if he had any weapon within reach to which Castellana responded in the affirmative, pointing to a drawer in a nearby desk. The agent seized four handguns from that drawer. Castellana contended that his response to that question should have been excluded because he had not been advised of his *Miranda* warnings. The Court, in denying Castellana's contention stated:

> The safety of the operation was Arwine's primary concern, he testified, and the very form of his first inquiry—weapons within reach—shows it was limited to this proper concern. . . . Nor is there any indication of devious intent by the agents to achieve an investigatory end by means of masquerading as security measures: such activities might be made short work of. Id. 500 F.2d at 326.

The majority in *Castellana* determined that the concern about safety was a legitimate reason relieving the necessity of *Miranda* warnings. The dissent in that case disputed the perception of the majority about the dangerousness of the situation, stating that the agents did not actually feel physically threatened. The case before us does not present this problem. No one could dispute the obvious peril to the officers and the bystanders.

We, therefore, conclude that the statement made by appellant was admissible and that a motion to suppress would have been without merit. Accordingly, counsel was not ineffective. See *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977).

The order of the lower court is affirmed.