J-S74002-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                                :            PENNSYLVANIA
                                                  :

                 v.                         :

BREON LAWRENCE                 :

               Appellant         :       No. 1347 EDA 2018

Appeal from the PCRA Order April 17, 2018
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0005326-2014

BEFORE:  LAZARUS, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY LAZARUS, J.                  Filed: January 2, 2019

Breon Lawrence appeals from the order, entered in the Court of Common Pleas of Delaware County, denying his petition filed under the Post-Conviction Relief Act ("PCRA").[1]  Lawrence argues trial counsel was ineffective for (1) failing to object and move for a new trial when the prosecution asked a witness if he was Muslim, and (2) failing to request a voluntary manslaughter charge.  After our review, we affirm.

On April 11, 2014, Donald Womack, Jabri Green, Dondre Ellis, and Jahkil Swain drove to Crosby Square in Chester, Delaware County.  When they arrived, Lawrence, who was outside of the vehicle, leaned into the vehicle and

_____

[1] 42 Pa.C.S.A. § 9541-9546.

asked the victim, Swain, who was in the passenger's seat, "[i]s it beef or is it squashed?"[2] N.T. Trial, 8/5/15, at 57. Lawrence asked the victim this approximately ten times. He then asked the victim if he wanted to fight, to which the victim replied that he does not fight. Lawrence again asked, "What, you think you can't die? . . . I just want to know if it's beef or if it's squashed." *Id.* at 62-63. The victim responded with an obscenity and, when pressed again, stated, "It's whatever." *Id.* at 61-63. After the victim's response, Lawrence pulled out a gun, ran in front of the car, and fired a shot, killing Swain.

Multiple witnesses identified Lawrence as the shooter and police officers recovered the murder weapon from Lawrence's bedroom. On August 5, 2015, a jury found Lawrence guilty of murder in the first degree,[3] recklessly endangering another person,[4] possession of an instrument of crime,[5] and persons not to possess a firearm.[6]

---

[2] According to common street talk in Chester City, a "beef" means "problems" and "squashed" means let's be friends again, let's not beef no more." N.T. Trial, 8/5/15, at 57. Squashed in relation to a beef means "let bygones be bygones" and [l]et's shake hands and make up." *Id.* at 60.

[3] 18 Pa.C.S.A. § 2502.

[4] 18 Pa.C.S.A. § 2705.

[5] 18 Pa.C.S.A. § 907.

[6] 18 Pa.C.S.A. § 6105.

During trial, counsel for the Commonwealth presented several witnesses, including Dondre Ellis, a friend of Lawrence, who was a passenger in the vehicle during the shooting. During direct examination, the Commonwealth asked Ellis where he and the victim were going before the shooting took place. The following exchange occurred between Ellis and the assistant district attorney:

Q: Okay. When you guys came back up from the mall, where were you headed? Where were you guys going, you and Jahkil?

A: I got dropped off.

Q: Okay. Where'd you get dropped off at?

A: (inaudible).

Q: I'm sorry, say that again?

A: I went to go pray.

Q: You went to a parade?

A: Wanted to go pray.

Q: Party?

A: Pray.

Q: Oh, pray, I'm sorry. I couldn't -- I -- you're Muslim, correct?

A: Yes.

Q: Where did -- so when you got dropped off, whoever this third person was that was driving, where were you at in the car when they dropped you off? Were you in the back?

N.T. Trial, 8/5/16, at 240-41.

On September 11, 2015, the trial court sentenced Lawrence to life imprisonment without the possibility of parole. Lawrence filed a timely appeal and this Court affirmed Lawrence's judgment of sentence on June 24, 2016. ***Commonwealth v. Lawrence***, 153 A.3d 1117 (Pa. Super. 2016).

Lawrence filed a timely *pro se* PCRA petition on April 26, 2017. The PCRA court appointed counsel on April 28, 2017, but on June 26, 2017, private counsel entered his appearance and filed an amended PCRA petition on July 20, 2017. On August 15, 2017, the Commonwealth filed a response, and on August 24, 2017, PCRA counsel filed a reply. The court held an evidentiary hearing on March 15, 2018, and dismissed Lawrence's PCRA petition. On appeal, Lawrence raises the following two issues:

1. Did not the PCRA court err in denying Lawrence a new trial where the prosecutor, at trial, asked a close friend of Lawrence if he was a "Muslim" and trial counsel had no reasonable basis for failing to object and move for a mistrial?

2. Did not the PCRA court err in failing to grant Lawrence a new trial where Lawrence's trial counsel unjustifiably failed to request a voluntary manslaughter charge when the shooting was the immediate result of and was in fact during a heated argument?

Appellant's Brief, at 4.

Our standard of review on appeal from the denial of a PCRA petition is well settled:

> We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This

> Court may affirm a PCRA court's decision on any grounds if the record supports it. Further, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review plenary.

*Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa. Super. 2012) (internal citations omitted).

In his first issue, Lawrence argues that the PCRA court erred in finding counsel was not ineffective for failing to object and move for a mistrial when the Commonwealth asked a witness and friend of Lawrence if he was a Muslim. We find no error.

To prevail on a claim alleging counsel's ineffectiveness under the PCRA, an appellant must demonstrate the following: (1) the underlying claim is of arguable merit; (2) counsel's course of conduct was without a reasonable basis designed to effectuate his client's interest, and (3) appellant was prejudiced by counsel's ineffectiveness, i.e. there is a reasonable probability that but for the act or omission in question the outcome of the proceeding would have been different. *Commonwealth v. Bracey*, 795 A.2d 935, 942 (Pa. 2001); *Commonwealth v. Kimball*, 724 A.2d 326, 333 (Pa. 1999).

The Pennsylvania Judicial Code provides:

> (b) Religious belief may not be shown.-- No witness shall be questioned, in any judicial proceeding, concerning his religious belief; nor shall any evidence be heard upon the subject, for the purpose of affecting either his competency or credibility.

42 Pa.C.S. § 5902. The Pennsylvania Supreme Court has stated that there is no *per se* rule requiring a finding of reversible error if there is a violation of the statute. Rather, "whether evidence admitted in violation of a statute *actually* deprives a defendant of his right to a fair trial must be viewed in light of attendant circumstances." **Commonwealth v. Eubanks**, 512 A.2d 619, 623 (Pa. 1986) (quoting **Commonwealth v. Mimms**, 385 A.2d 334, 336 (Pa. 1987) (emphasis added)). An isolated comment in violation of the statute is not an automatic entitlement of relief. **Commonwealth v. Allen**, 361 A.2d 393 (Pa. Super. 1976). Rather, the record must demonstrate that the violation deprived the defendant of a fair trial. **Eubanks**, **supra**.

In **Allen**, appellant argued the trial court erred in not declaring a mistrial when an officer testified that the co-defendant stated that he worked on a "Muslim Truck" with the appellant. **Allen**, 361 A.2d at 397-98. The testimony was in response to a question regarding the statement a co-defendant gave to the police about his occupation. In his argument, appellant claimed "any reference to 'Muslims' was highly prejudicial based upon the theory that white jurors would automatically be turned against members of the Nation of Islam or Black Muslim religion." **Id.** at 398. This Court, finding no error, reasoned that the reference was an isolated instance of the word "Muslim" in a lengthy trial record. We stated: "[W]e are not convinced that a jury would render an unfair verdict merely because it was aware that a defendant, whose own religion was undisclosed, worked on a truck operated by a religious sect, even

if we were to accept the premise that the particular sect was controversial to certain segments of the citizenry." ***Id.***

In contrast, in ***Eubanks***, the Supreme Court found reversible error because the prosecution continuously asked the witness improper questions about his religion in an attempt to discredit him even after the court sustained objections regarding such. The Court stated: "[A] new trial is required because the questioning was irrelevant to any issue in the case and because the improper inquiry concerning Eubanks' religious beliefs continued even after the court sustained objections to this type of inquiry, gave an instruction, and ordered the improper questions stricken from the record." ***Eubanks***, 512 A.2d at 623.

Here, like in ***Allen***, and unlike in ***Eubanks***, counsel did not persist in asking improper questions about the witness's religion in an attempt to discredit him; rather, this was simply one isolated reference in a lengthy transcript. After a review of the record, we are not convinced this single reference deprived Lawrence of a fair trial. Counsel, therefore, was not ineffective for failing to object to the prosecutor's question.

In his second issue, Lawrence argues that the PCRA court erred in failing to grant Lawrence a new trial when his counsel "failed to request a voluntary manslaughter charge when the shooting was the immediate result of and was in fact during a heated argument." Appellant's Brief, at 9. Lawrence is not entitled to relief on this claim.

The Pennsylvania Crimes Code provides for a conviction of voluntary manslaughter under the following two circumstances: (1) where the defendant acted under a sudden and intense passion resulting from a serious provocation; or, alternatively, (2) where the defendant knowingly and intentionally killed an individual under the unreasonable belief that the killing was justified. 18 Pa.C.S. § 2503(a), (b). **See Commonwealth v. Busanet**, 54 A.3d 35, 52 n.11 (Pa. 2012).

Here, Lawrence has not asserted that he intentionally killed the victim under the unreasonable belief that the killing was justified. **Busanet**, **supra**. Thus, the question is whether Lawrence was "acting under a sudden and intense passion" resulting from serious provocation by the victim. 18 Pa.C.S. § 2503(a). The test for provocation is "whether a reasonable [person] confronted by the same series of events, would become impassioned to the extent that his mind would be incapable of cool reflection." **Commonwealth v. Kim**, 888 A.2d 847, 853 (Pa. Super. 2005) (citing **Commonwealth v. Galloway**, 485 A.2d 776, 783 (Pa. Super. 1984)). "[O]nly where an instruction is requested and only if the evidence supports 'heat of passion' voluntary manslaughter, is an instruction thereon required." **Commonwealth v. Browdie**, 671 A.2d 668, 674 (Pa. 1996).

To receive a "heat of passion" voluntary manslaughter instruction, the petitioner must demonstrate that there was evidence in the record that supports such an instruction, specifically, evidence that demonstrates that at the time of the killing, the petitioner acted under a sudden and intense passion

resulting from serious provocation from the victim. ***Commonwealth v. Sanchez***, 82 A.3d 943, 979 (Pa. 2013). The ultimate test to determine whether the provocation by the victim was sufficient is, "whether a reasonable man who was confronted with the provoking events would became impassioned to the extent that his mind was incapable of cool reflection." ***Commonwealth v. Hutchinson***, 25 A.3d 277, 314–15 (Pa. 2011) (quoting ***Commonwealth v. Thornton***, 431 A.2d 248, 252 (Pa. 1981)). Neither words of provocation nor slight assault are sufficient to reduce murder to manslaughter. ***Commonwealth v. Sheppard***, 648 A.2d 563, 566 (Pa. Super. 1994).

Here, there is nothing in the record to support a finding that a reasonable person "confronted by the same series of events, would become impassioned to the extent that his mind would be incapable of cool reflection." ***Kim***, ***supra***. In order to support a charge of voluntary manslaughter, the victim must have provoked the passion. Here, Lawrence was the party attempting to provoke a response from the victim, as he repeatedly asked the victim whether the issue was "squashed" or "beef." N.T. Trial, 8/5/15, at 61. The victim did not answer Lawrence. Lawrence then asked the victim again and the victim responded by spitting on him and telling Lawrence to "suck his d**k." ***Id***. at 61. Lawrence again asked the victim if the issue was "beef" or "squashed" and the victim was silent. Lawrence then asked the victim whether he wanted to fight, and the victim responded that

he does not fight. Lawrence responded, "what you think you can't die? . . . I just want to know if it's beef or if it's squashed." *Id.* at 62-63. The victim responded with "it's whatever." *Id.* at 63. Lawrence then pulled out a gun and began firing, killing the victim.

The mere fact that the victim made an obscene retort to Lawrence's persistent questioning is insufficient to warrant a "heat of passion" instruction under the law. *See Sheppard*, *supra* at 566 (serious provocation not established when victim struck defendant's brother and arguments ensued between defendant and victim); *Commonwealth v. Cartagena*, 416 A.2d 560, 563 (Pa. Super. 1979) (punch by victim was not legally adequate provocation for defendant to stab victim). There is no evidence in the record to suggest that, at the time of the murder, Lawrence had been "so provoked by the victim as to be compelled by passion beyond the control of his reason." *Commonwealth v. Hutchinson*, 25 A.3d 277, 314 (Pa. 2011). Counsel, therefore, was not ineffective for failing to request the instruction. *Bracey*, *supra*.

Order affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 1/2/2019*