471 A.2d 1239

**COMMONWEALTH of Pennsylvania**

v.

**Larry HOWARD, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 22, 1983.

Filed Jan. 20, 1984.

Rehearing Denied March 16, 1984.

Petition for Allowance of Appeal Denied Aug. 3, 1984.

446

William P. James, Philadelphia, for appellant.

Jane Cutler Greenspan, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before CIRILLO, JOHNSON and CERCONE, JJ.

JOHNSON, Judge:

Appellant was adjudged guilty on April 30, 1980 by a jury trial on the charges of assault and battery,[1] aggravated assault and battery,[2] assault and battery with intent to commit murder,[3] aggravated assault and battery on a police officer,[4] and carrying firearms on a public street.[5] Following the denial of written post-verdict motions, appellant was sentenced on October 15, 1981 to consecutive terms of 3½ to 7 years for the merged assault charges [6] and 1½ to 3 years for the firearms violation. A motion for reconsideration of sentence was denied on January 5, 1982. Appellant brings this direct appeal from the judgment of sentence. We affirm.

The facts underlying appellant's convictions concern his involvement in the shooting of Officer Parsons, a Philadelphia policeman, on May 30, 1972 near Holmesburg Prison. The victim observed the appellant and another man removing a large bag, which contained grappling hooks, a shotgun, and one hundred rounds of ammunition, from a vehicle. The appellant dragged the bag up an embankment while his collaborator remained near the vehicle. Officer Parsons requested the appellant to stop. As Parsons reached for his radio, the appellant shot at him from the top of the embankment. The second male also fired at the victim. Parsons radioed for assistance, but was critically wounded by a gunshot to the jaw and mouth before help arrived. Upon arriving at the scene, the police cordoned off and surrounded the area where the suspects were believed to have been hiding. The appellant was arrested the follow-

1. 18 P.S. § 4708; presently found in 18 Pa.C.S.A. § 2701.

2. *Id.* § 4709; presently found in 18 Pa.C.S.A. § 2702(a)(1).

3. *Id.* § 4710; presently found in 18 Pa.C.S.A. §§ 2705 and 2702(a)(4).

4. *Id.* § 4709; presently found in 18 Pa.C.S.A. § 2702(a)(3).

5. *Id.* § 4628; presently found in 18 Pa.C.S.A. § 6108.

6. The four assault convictions were merged into the aggravated assault conviction for sentencing purposes.

ing day attempting to leave the area. Appellant was first tried and convicted by a jury on February 7, 1973. On appeal permitted *nunc pro tunc,* the Superior Court vacated sentence and remanded for an evidentiary hearing on the question of whether trial counsel was ineffective. *Commonwealth v. Howard,* 258 Pa.Super. 440, 392 A.2d 875 (1978). Upon remand, the lower court granted a new trial. It was appellant's conviction at this second trial that he presently appeals.

On this appeal, appellant presents four substantive issues for our review through the allegation that trial counsel was ineffective. "It is well settled that '[w]hen confronted with a claim of ineffective assistance of counsel, we must first ascertain whether the issue underlying the charge of ineffectiveness is of arguable merit, and if so, it must be determined whether the course chosen by counsel had some reasonable basis to effectuate his client's interests.' " *Commonwealth v. Lewis,* 314 Pa.Super. 298, 303, 460 A.2d 1149, 1151 (1983) (citations omitted). See also, *Commonwealth v. Evans,* 489 Pa. 85, 413 A.2d 1025 (1980). We will first review the merits of the claims in issues # 1, # 2, # 3, and # 4 and then discuss the validity of appellant's ineffective assistance of counsel claims. The issues are:

1. Whether the trial court erred in denying appellant's motion to discharge a juror for cause.

2. Whether appellant was deprived of his right to be present during the selection of the jury.

3. Whether appellant was deprived of his right to public trial when (a) the courtroom was temporarily emptied so the jury panel might be seated, (b) certain people were excluded from the courtroom for a short period of time, and (c) the trial court entered a written order to control the public's conduct in or near the courtroom.

4. Whether certain photographs were impermissibly entered into evidence.

5. Whether trial counsel was ineffective for failing to object to the actions occurring in issues # 2, # 3 and # 4.

. In the first issue, appellant contends that the trial court erred in failing to excuse juror Susan Manni for cause after she expressed antipathy for the radical group known as MOVE.[7] Though the charges against appellant were not related to any MOVE activity, the prospective jurors were questioned on their sentiments toward the organization because the appellant felt he could not get a fair trial since he was a MOVE sympathizer.

■ Our standard of review has been clearly outlined.
   As to the challenge for cause which is now claimed to have been improperly denied, we must bear in mind 'that the scope of the voire dire examination rests in the sound discretion of the trial judge and his decisions, even a challenge for cause, will not be reversed in the absence of palpable error.'
(citations omitted)

*Commonwealth v. Sparrow*, 471 Pa. 490, 501, 370 A.2d 712, 717 (1977). The law recognizes that any initial ambivalence by a prospective juror does not warrant her dismissal where she subsequently indicates she can set aside any bias and reach a verdict based upon the evidence properly presented to the jury. *Commonwealth v. Rough*, 275 Pa.Super. 50, 58, 418 A.2d 605, 609 (1980). This remains true even if the juror states that some evidence would be required to change an impression already formed if the juror also indicates she would be guided by the evidence. *Commonwealth v. McGrew*, 375 Pa. 518, 526, 100 A.2d 467, 471 (1953).

■ We do not expect jurors to be free from all prejudices. Rather, the law requires them to put aside their prejudices and determine guilt or innocence on the facts presented. *Commonwealth v. Johnson*, 452 Pa. 130, 305 A.2d 5 (1973).

7. Appellant had exhausted his peremptory challenges prior to the seating of the jury. Therefore, if the challenge of this juror was improperly denied by the trial court, we would be constrained to find that the error was not harmless. *Commonwealth v. Rough*, 275 Pa.Super. 50, 58 n. 4, 418 A.2d 605, 609 n. 4 (1980).

"Thus '[t]he test of disqualification is the juror's ability and willingness to eliminate the influence of his scruples and render a verdict according to the evidence....' Moreover, this determination is to be made by the trial judge based upon the juror's awareness and demeanor, and we will not reverse a judge's ruling on a challenge for cause absent a palpable abuse of discretion."
(citations omitted)

*Commonwealth v. Short,* 278 Pa.Super. 581, 591, 420 A.2d 694, 699 (1980).

■ Applying these rules to the present situation, we find no abuse of discretion occurred. Though juror Manni initially expressed doubt that she could reach a verdict fairly, we feel her subsequent responses to Judge Guarino's questions clearly reflected her capability to put aside her prejudice and properly perform her duty as a juror. Our review shows this not to be a situation where the prospective juror was coerced into compliance by the trial judge's chiding. Rather, Judge Guarino explained the objectivity required from a juror, and asked Ms. Manni if she could comply with this standard. Ms. Manni repeatedly indicated she could be fair and try the appellant on the evidence.[8] We find no error with this voir dire.

■ In the second issue, appellant contends he was deprived of his right to be present during the selection of the jury. On April 17, 1980, the trial judge prepared to address the prospective jurors. The trial transcript shows that the appellant interrupted the trial court with what has been accurately characterized in the trial court opinion as a "vituperous avalanche". After being warned by the trial court, the appellant continued to act in a disruptive manner. Consequently, he was removed from the courtroom for the remainder of the voir dire. Judge Guarino expressly told the appellant he could return to the courtroom when he promised to conduct himself properly. The court also ordered the appellant to be examined by a psychiatrist during

8. N.T., April 17, 1980, pgs. 217–222.

the time he was removed from the courtroom to determine the basis for his irrational behavior. The appellant claims he should have been returned to the courtroom sooner than he was. Our review shows the trial court handled the situation properly.

"The purpose of a criminal trial is to determine the guilt or innocence of the accused. Any conduct not directed to this end is improper and should be controlled by the court. 'It is ultimately the authority and responsibility of the trial judge ... to maintain the atmosphere appropriate for a fair, rational and civilized determination of the issues ...' " *Commonwealth v. Africa,* 466 Pa. 603, 618, 353 A.2d 855, 862 (1976). (citations omitted) This court has previously held that a defendant may be removed from a courtroom when his conduct so disrupts the court's ability to proceed in an orderly manner. *Commonwealth v. Henderson,* 275 Pa.Super. 350, 418 A.2d 757 (1980).

Our factual situation closely parallels that in *Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). In *Allen,* as in the case before us, the petitioner refused court-appointed counsel and attempted to conduct his own defense. During the examination of the jurors, the petitioner began to argue with the judge in a contentious and abusive manner. The trial judge warned the petitioner that a similar outbreak would result in his removal. However, the petitioner continued his belligerent behavior. As a consequence, the petitioner was removed from the courtroom. The voir dire examination continued, and the jury was chosen in the petitioner's absence.

The United States Supreme Court approved of this action by stating:

"[W]e explicitly hold today that a defendant can lose his right to be present at a trial if, after he had been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive and disrespectful of the court that his trial cannot be carried on with him in the courtroom ... We believe trial judges

confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case."

*Illinois v. Allen,* 397 U.S. at 343, 90 S.Ct. at 1060. It is clear from the record before us that appellant Howard acted in a manner which warranted the action taken by the trial court. Therefore, the appellant lost his right to be present, and the jury was properly chosen in his absence.[9]

In the third issue, appellant argues he was deprived of his right to a public trial through three separate acts by the trial court. The first complaint concerns the propriety of Judge Guarino temporarily clearing the courtroom so that forty members of the jury panel could enter and be seated together. The appellant's sole objection to this action is that the record does not reveal how long the public were excluded from the courtroom. The trial court opinion states "The spectators were permitted to return as soon as the veniremen were seated." (Opinion of the Trial Court pg. 14). Yet, appellant argues this is not sufficient to indicate appellant incurred no harm through their removal, since there return is not officially noted in the record. We feel this temporary exclusion for logistic reasons is within the court's discretion. The appellant bears the burden of providing a record which will support his contention and his corresponding claim of ineffective assistance of counsel. *Commonwealth v. Musi,* 486 Pa. 102, 404 A.2d 378 (1979). Nothing in the record or appellant's argument clarifies how this temporary exclusion abridged his right to a public trial.[10]

9. The three cases cited in appellant's argument are distinguishable from this situation. In each of these cases—*Commonwealth v. Tolbert,* 246 Pa.Super. 23, 369 A.2d 791 (1977), *Commonwealth v. Graves,* 238 Pa.Super. 452, 356 A.2d 813 (1970), and *Commonwealth v. McLaurin,* 292 Pa.Super. 392, 437 A.2d 440 (1981)—the defendant's absence from the trial proceedings did not result from any disruptive action on defendant's part. In contrast, it was appellant Howard's courtroom behavior that compelled his removal during the voir dire.

10. The record, while not indicating when the spectators returned, likewise did not indicate when they actually left the courtroom.

■ The second allegation was that appellant's right to a public trial was infringed when the trial court excluded recognizable members of the MOVE group from the trial on the afternoon of April 24, 1980. Judge Guarino based his decision to prevent these spectators from returning for the remaining hour of the afternoon session on his observation of how their presence affected appellant's courtroom behavior. The trial judge stated in the record and explained in the trial court opinion that the presence of the MOVE members in the courtroom incited the appellant to be unruly and disruptive, ostensibly undertaking grandstanding outbursts to please them. Based upon the trial judge's observations, the appellant was more behaved in the courtroom when these spectators were not in attendance. Consequently, when the appellant had engaged in a noisome outburst during the April 24th morning trial session, they were barred from the afternoon session.

■ Trial judges should be given sufficient discretion, when confronted with defiant defendants, to meet the circumstances of each case. *Illinois v. Allen*, 397 U.S. at 343, 90 S.Ct. at 1061. The right to a public trial is not absolute and must give way to other substantial interests. "In considering such other interests, a court must assess all of the circumstances to determine if they present a situation in which an exclusion order is necessary ... [T]he exclusion order must be fashioned to effectuate protection of the important interest without unduly infringing upon the accused's right to a public trial either through its scope or its duration." *Commonwealth v. Knight*, 469 Pa. 57, 66, 364 A.2d 902, 906 (1976). Since the trial court alone is "sufficiently close to the circumstances to apprehend fully the subtleties that may be present," the decision to issue, the scope, and the duration of the exclusion order must be left to the sound discretion of the trial court. Therefore, as the reviewing court, we must only determine whether the trial court abused its discretion in issuing and fashioning the scope of the duration order. *Commonwealth v. Knight, supra.*

In light of appellant's continued contumacious behavior and the brief time period some spectators were omitted from the courtroom, we feel the exclusion order was justified and fashioned to meet the trial court's needs.[11]

■ The third complaint relates to the trial court's April 24, 1980 order which limited congregation outside of the courtroom. This action must be evaluated by the previously discussed standard outlined in *Commonwealth v. Knight, supra,* to determine if the trial court abused its discretion. We feel the circumstances warranted the contested court order. There existed the possibility that Russell Shoats and Robert Joyner, two dangerous prisoners and MOVE members, would be summoned to testify at appellant's trial.[12] The court's security concerns that would attend their court appearance were amplified by the presence of MOVE supporters in the hallways outside the courtroom. Furthermore, the scope of the order was tailored to meet the court's security concerns. It expressly stated no one should be denied access to the courtroom. Given these volatile conditions, we feel appellant's right to a public trial was sufficiently considered and protected while the court addressed other important interests.

■ Appellant's fourth issue is that he has been deprived of a fair trial by the introduction of certain photographs. This contention involves four black and white photographs that depicted the interior of the automobile where the police officer was shot. In reviewing the admission of photo-

11. The court's attempt to quiet the appellant by removing these spectators was a less restrictive alternative than removing the appellant himself. This appears to be a meritorious attempt by the trial judge to control the appellant's disruptive behavior through the least restrictive option available.

12. Appellant desired Shoats' and Joyner's appearance to rebut the motive attributed to the appellant by the Commonwealth that the appellant was attempting to aid them in an escape attempt on the night the policeman was shot. The court initially felt their testimony was unnecessary since this motive was not an element in any crime charged to the appellant. At the time of the order in question, the court indicated that they would be permitted to appear once the relevance of their testimony was established.

graphs of a corpse in a homicide case, the Pennsylvania Supreme Court has determined the matter to be within the discretion of the trial judge, absent an abuse of this discretion. The review to be applied is a two-tiered analysis.

> The trial judge must initially decide whether the photographs possess inflammatory characteristics. If they do not, the photographs are admissible as are any evidentiary items, subject to the qualification of relevance.... If the photographs are deemed inflammatory, then the trial judge must decide whether the photographs are of such essential evidentiary value that their need clearly outweighs the likelihood of their inflaming the passions of the jurors. (citation omitted)

*Commonwealth v. Hudson*, 489 Pa. 620, 630, 414 A.2d 1381, 1386 (1980). Applying this review, the court in *Hudson* found the black and white photographs including the deceased's body not to be inflammatory and to be of probative value.

The photographs admitted in the case presently before us, though including spots purporting to be blood and teeth and bone fragments, do not contain a human corpse.[13] Moreover, the photographs were probative to support the Commonwealth's contention that one of the shots which hit the police officer was fired from the elevated embankment where the appellant was located. "Where black and white photographs were employed to more clearly describe the area of a crime, the mere fact that blood was visible in the pictures does not necessarily make them inflammatory so that their admission constitutes an abuse of discretion." *Commonwealth v. Sullivan*, 450 Pa. 273, 281, 299 A.2d 608, 612 (1973). "Further, the potential for inflaming the minds of the jurors is greatly diminished where, as here, the photos merely depict a crime scene as opposed to photographs exhibiting a bruised and bloodied crime victim."

13. The cases cited by appellant are distinguishable from factual situation presently before us. Appellant's cases all concern photographs depicting gruesome displays of the bodies and wounds of victims. Again, the photographs for our review do not depict a deformed human corpse.

*Commonwealth v. Miller,* 268 Pa.Super. 123, 132, 407 A.2d 860, 865 (1979).

The possibility of inflaming the juror's minds and passions with the black and white photographs admitted by the trial court is virtually non-existent. Additionally, the photographs do have evidentiary value. Our review finds that the trial court properly admitted these photographs.

The fifth issue is appellant's ineffective assistance of counsel claim for counsel's failure to object to the trial court's action in issues #.1, # 2, # 3 and # 4. Since we have found none of these claims possess any merit, the trial attorney's posture on these issues was not ineffective counsel. Counsel cannot be deemed ineffective for failing to pursue frivolous issues. *Commonwealth v. Bey,* 294 Pa. Super. 229, 439 A.2d 1175 (1982).

Judgment of sentence affirmed.