514 A.2d 884

COMMONWEALTH of Pennsylvania

v.

Robert FREEMAN, Appellant.

Superior Court of Pennsylvania.

Submitted June 30, 1986.

Filed Aug. 28, 1986.

334

Marc A. Arrigo, Philadelphia, for appellant.

Jane C. Greenspan, Assistant District Attorney, Philadelphia, for Com., appellee.

Before OLSZEWSKI, CERCONE and HESTER, JJ.

HESTER, Judge:

On December 6, 1984, Gary D. Gully arrived at 1034 South 52nd Street, Philadelphia, the residence of his mother-in-law. The residence was a rooming house where several roomers shared a common kitchen and bathroom. Gully had been a resident of the house, and he was returning to pick up several metal cans which he had stored there earlier. Gully recycled cans as part-time employment.

Gully could not find the cans, and his mother-in-law could not recall seeing them. He then walked to the kitchen where appellant, Robert Freeman, and a woman were speaking. When Gully asked them if they had seen the cans, appellant became belligerent and threatened to shoot him. Appellant apparently thought that Gully was accusing him of stealing the cans.

Shortly thereafter, appellant left the kitchen and walked to his room. As Gully walked passed appellant's room to the front door, appellant attacked him with a pipe. Gully defended himself with a martial arts kick and evaded some blows, but appellant nevertheless succeeded in striking his face with the pipe. The men then proceeded to wrestle, and Gully disarmed appellant. Shortly thereafter, the police

arrived, Gully was taken to the hospital where he was treated for a broken jaw and appellant was arrested.

Appellant was charged with aggravated assault, simple assault and recklessly endangering another person. Following a jury trial, appellant was convicted of aggravated assault and simple assault. Post-verdict motions were denied, and appellant was sentenced under the Mandatory Sentencing Act to imprisonment of five to ten years. This appeal was thereafter filed from the judgment of sentence of October 30, 1985.

Appellant raises the following arguments: 1) his due process rights were violated by application of the Mandatory Sentencing Act, 42 Pa.C.S. § 9714; 2) the Mandatory Sentencing Act violates the due process clause; 3) the jury was prejudiced because the trial court denied appellant's challenges for cause to two jurors; 4) the trial court erred in admitting the victim's statement concerning his injury because it was the result of an illegal arrest; 5) the trial court erred in restricting cross examination of the victim on inconsistent statements; and 6) the trial court erred in denying appellant's submitted charges on the missing witness rule, self defense and prior inconsistent statements. We shall address each of these arguments. In doing so, we affirm.

First, appellant complains that his due process rights were violated by application of the Mandatory Sentencing Act because the Commonwealth failed to give proper notice to proceed under the Act. According to appellant, this alleged failure to give proper notice took three forms: 1) there was no notice in the information which in turn affected appellant's decision whether to plead guilty; 2) notice during pretrial was inadequate because it did not identify the prior convictions, their information numbers and dates, the sentence imposed and the trial judge; and 3) the purported notice was defective because it referred to five years *maximum* and ten years *maximum* sentence.

Section 9714(a) of the Sentencing Code provides that anyone convicted of aggravated assault by intentionally causing serious injury or by conduct in extreme indifference to human life shall be sentenced to a minimum sentence of at least five years if they had previously been convicted of a crime of violence. Section 9714(c) requires "reasonable notice of the Commonwealth's intention to proceed under" the mandatory sentencing provision. Said notice must be given "after conviction and before sentencing." Subsection (c) states specifically that notice is not required prior to conviction.

Here, the complaint contained a rubber stamp notice stating "mandatory sentence case." On January 18, 1985, four months prior to trial, the Commonwealth filed and served a written notice that it was prosecuting this matter as a mandatory sentencing case. This notice informed appellant that in the event of conviction he would serve a minimum of five years and maximum of ten years imprisonment.

At trial following conviction, the prosecutor stated:

We ask bail be revoked. We also notify the defendant at this time that he has a prior conviction for aggravated assault and we will be moving under the mandatory minimum guidelines. I think notice has been sent, but we ought to notify him that Commonwealth will be proceeding. Prior aggravated assault caused serious bodily injury.

N.T., May 6, 1985, at 137–38.

On three occasions, two prior to conviction and one following conviction but prior to sentencing, the Commonwealth notified appellant of its intent to apply mandatory sentencing provisions. There is no requirement that the Commonwealth provide notice prior to trial. Therefore, appellant's argument concerning the need for notice in the information is rejected. *Commonwealth v. Reagan,* 348 Pa.Super. 589, 502 A.2d 702 (1985).

Similarly, appellant's arguments concerning the sufficiency of notice must fail. The rules do not require notice of

the information number, conviction date, sentence and trial judge on the prior proceeding. The Commonwealth referred to the prior conviction for aggravated assault. Surely, appellant would recall the former proceedings and disposition. If not, he would have access to court records to acquire detailed information.

Appellant is incorrect in arguing that the written notice four months prior to trial was defective because it referred to sentence of at least five years *maximum* and ten years maximum. The notice states five years *minimum* and ten years maximum.

■ Next, appellant argues that the mandatory sentencing provisions violate the due process clause because the Commonwealth's burden at sentencing is to prove the prior conviction by a preponderance of the evidence only. According to appellant, mandatory sentencing proceedings should require the heavier burden of clear and convincing evidence.

This argument was addressed by our supreme court in *Commonwealth v. Allen,* 508 Pa. 114, 494 A.2d 1067 (1985), and *Commonwealth v. Wright,* 508 Pa. 25, 494 A.2d 354 (1985), *aff'd sub nom. McMillan v. Pennsylvania,* —— U.S. ——, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986). It was held that where the prior conviction is not an element of the later crime for which the defendant is to be sentenced, it can be proven by a preponderance of the evidence. Appellant's prior conviction of aggravated assault was not an element of the charges here.

■ Appellant challenges the constitutionality of the Mandatory Sentencing Act in two more respects: 1) the burden of proof provision, 42 Pa.C.S. § 9714(c), violates the Pennsylvania Constitution and separation of powers doctrine because burden of proof is a matter for the Pennsylvania court and beyond the powers of the legislature; 2) prosecutors have unfettered discretion whether to proceed under mandatory sentencing provisions. Both of these arguments have been addressed by this court in *Common-*

*wealth v. Bannister*, 345 Pa.Super. 178, 497 A.2d 1362
(1985). In upholding the constitutionality of the burden of
proof standard of the Act, the *Bannister* court relied on
*Commonwealth v. Wright, supra,* which held that the
"preponderance standard satisfies the minimum require-
ments of due process as employed in the legislature's man-
datory sentencing scheme." *Id.,* 508 Pa. at 41, 494 A.2d at
362. In further reliance on *Wright, supra,* the *Bannister*
court addressed the constitutionality of the prosecutor's
unilateral power to proceed under the Act.

> [Section 9712 does not] improperly delegate legislative
> power to the executive by giving the prosecution discre-
> tion whether to invoke the Mandatory Sentencing proce-
> dure.

*Id.,* 345 Pa.Super. at 183, 497 A.2d at 1365.

■ Appellant's two remaining arguments concerning the
constitutionality of the Act are meritless. He argues first
that the preponderance burden of proof shifted the burden
to him and caused the improper admission of testimony
from the judge who presided over the prior conviction.

The lesser standard of preponderance of the evidence
does not shift the burden to the defendant to disprove his
prior conviction. It simply requires less evidence of the
prior offense than typically required in criminal proceed-
ings.

Appellant objected to Judge Paul Silverstein's testimony
at sentencing on the grading of the prior conviction for
aggravated assault. Appellant compares that testimony
with the testimony of a juror on the ambiguity of a verdict;
a juror cannot be recalled to explain a verdict.

The quarter sessions file on the prior aggravated assault
conviction did not specify whether or not it was a felony in
the second degree. Judge Silverstein was called to clarify
the grading. This is not similar to recalling a jury to clarify
its verdict. The verdict had identified the grading as a
felony, but the record did not reflect that. Judge Silver-
stein was called simply to testify on what his bench notes

reflected on the grading. He was not a fact-finder, and he was not called to clarify an ambiguity in the verdict; he was called only to provide information not provided by the deficient record.

■ Appellant's next contention is that the jury was prejudiced because the court refused to strike two prospective jurors for cause. Appellant's request for additional strikes was also denied. Juror Rocco DiDonato had three cousins in law enforcement: a Delaware state trooper, Philadelphia detective and Philadelphia deputy sheriff. Juror Carol Lachman's son had been beaten by a gang two years before trial, and she feared that incident would affect her impartiality.

Broad discretion is accorded the trial court in ruling on whether prospective jurors should be dismissed for cause, and absent an abuse of discretion, the trial court's ruling will stand. *Commonwealth v. Pittman*, 320 Pa.Super. 166, 466 A.2d 1370 (1983); *Commonwealth v. Westerfer*, 308 Pa.Super. 474, 454 A.2d 633 (1982). Jurors are not expected to rid themselves of all prejudice and bias; it is only necessary that they remain objective throughout trial and return a verdict based solely on the admissible evidence. *Commonwealth v. Howard*, 324 Pa.Super. 443, 471 A.2d 1239 (1984). Moreover, a prospective juror who was related to a prosecutor from another county, had been the victim of a burglary and whose brother was a robbery victim was not disqualified when he had expressed with conviction his ability to be fair and impartial. *Commonwealth v. Fields*, 317 Pa.Super. 387, 464 A.2d 375 (1983).

DiDonato's relationship to law enforcement officers did not affect his objectivity as he stated unequivocally that he could render a verdict based solely on the facts presented. Although Lachman was initially uncertain of her ability to remain fair, she later stated that she could consider the evidence objectively. It has been held that the initial hesitation of a prospective juror does not justify dismissal when he later disregards any prejudice and states that he could reach a verdict based on the evidence alone. *Common-*

*wealth v. Howard, supra.* For these reasons, we hold that the trial judge did not abuse his discretion in denying a challenge for cause to DiDonato and Lachman.

■ The fourth issue is whether the warrantless arrest was unlawful, thereby rendering inadmissible the victim's statement concerning being struck by the pipe. Appellant argues that the officer who arrived at the scene had information concerning a misdemeanor investigation only. Since an arrest warrant is required for a misdemeanor not committed in the officer's presence, appellant argues that his arrest was unlawful.

Officer Samuel Lynch was assigned to highway patrol when he received a call to proceed to the rooming house. He was informed by radio that he would be investigating a hospital case, an indication of personal injury. When Lynch and his partner arrived, they found the victim standing in the hallway outside appellant's room. The victim's bloody mouth and swollen face prevented him from speaking clearly.

The officers learned from Gully that he had been struck with a lead pipe wielded by appellant. This was confirmed by an eyewitness. The officers then confronted appellant in his room and arrested him.

A warrantless arrest for a felony is lawful where the arresting officers had probable cause to believe that a felony had been committed and the person arrested was the felon. *Donnelly v. Pennsylvania,* 424 U.S. 974, 96 S.Ct. 1477, 47 L.Ed.2d 744 (1976); *Commonwealth v. Davis,* 308 Pa.Super. 204, 454 A.2d 92 (1982). Conversely, a warrantless arrest for a misdemeanor is lawful only where the offense had been committed in the presence of the arresting officer. *Commonwealth v. Trefry,* 249 Pa.Super. 117, 375 A.2d 786 (1977); *Commonwealth v. Gallagher,* 242 Pa.Super. 289, 363 A.2d 1274 (1976).

Officer Lynch had probable cause for believing that a felony had been committed: he was informed by dispatch that the victim was in need of hospital treatment, he ob-

served the victim's bloody and swollen face and he learned that a lead pipe was used as the weapon. The injuries were serious and correlated with aggravated assault of a felony grading. There was no error in holding the arrest to be lawful and admitting Gully's statement.

■ Appellant complains that the trial court erred in sustaining the Commonwealth's objection to his cross examination of the victim on prior inconsistent statements. According to appellant, the victim testified at the preliminary hearing that he did not see the pipe but later testified at trial that he saw the pipe.

Appellant has misconstrued the victim's testimony at the preliminary hearing and at trial. The pertinent testimony from the preliminary hearing was ambiguous on whether the victim saw the pipe.

Q. Sir, did you have an opportunity to see this pipe?
A. (No response.)
THE COURT: You may answer the question.
THE WITNESS: Not really, no.
Q. So the fact of the matter is, sir, you didn't see who was holding the pipe, isn't that right?
[ASSISTANT DISTRICT ATTORNEY]: Objection.
THE COURT: He can answer the question.
THE WITNESS: Yes, I saw who was holding the pipe.

N.T., January 10, 1985, at 6–7.

At trial, the victim testified that he saw the pipe, and appellant's counsel confronted him on cross examination with his preliminary hearing testimony.

Q. Now, do you remember being asked [at the preliminary hearing], sir, did you have an opportunity to see this pipe. Do you remember being asked that?
A. Yes.
Q. And do you remember saying, "Not really, no"?
A. Yes, I do remember recalling [sic] that, I did say that.
Q. And was that the truth?

A. Well, I did say that because at that time I didn't see the pipe.

Q. No—

N.T., May 3, 1985, at 69–70.

Appellant's counsel would not allow the witness to explain, and the court ruled that counsel was trying to isolate the statement, "Not really, no," by interrupting the witness' explanation. At the preliminary hearing, the victim testified that he did not "really" see the pipe but that he saw appellant wielding the pipe. It was this later statement that counsel tried to avoid at trial so that he could demonstrate that the victim's trial testimony concerning seeing the pipe was inconsistent with his preliminary hearing statement, "Not really, no."

We agree with the trial court's assessment that the preliminary hearing testimony was not inconsistent. At most, it was ambiguous, and the victim was properly given an opportunity to explain at trial. *See Commonwealth v. Marino*, 213 Pa.Super. 88, 245 A.2d 868 (1968), *affirmed* 435 Pa. 245, 255 A.2d 911 (1969), for a discussion of the use of a portion of prior statements for impeachment.

■ Finally, appellant argues that the trial court erred in denying jury charges on the missing witness rule, self-defense and prior inconsistent statements. Appellant requested the missing witness charge because four eyewitnesses were not called by the Commonwealth, and they were allegedly in the exclusive control of the Commonwealth.

The missing witness rule provides that a negative inference may arise from the failure of a party to call a witness who was in his exclusive control. *Commonwealth v. Rohach*, 344 Pa.Super. 229, 496 A.2d 768 (1985); *Commonwealth v. Harley*, 275 Pa.Super. 407, 418 A.2d 1354 (1980). The rule should not be applied, however, where there is a satisfactory explanation why the witness was not called. *Rohach, supra; Harley, supra.*

There was evidence that these witnesses would have provided cumulative evidence only; therefore, there was a

reasonable explanation for the Commonwealth's decision not to call them. Moreover, as they were eyewitnesses and appellant admits to being at the scene, these witnesses were presumably discoverable by him.

A charge on justification was also properly denied. Appellant did not raise a defense of justification. He denied holding and swinging a lead pipe. His explanation was that the victim rushed into his room, kicked him and, while running from the room, struck his head on the door frame. This was not an allegation of self-defense; therefore, a charge thereon would have been inconsonant with the evidence.

Finally, we reject appellant's argument that the court erred in denying his charge on prior inconsistent statements. We held above that the victim did not give a prior inconsistent statement at the preliminary hearing; therefore, we hold that the charge thereon was properly denied.

Judgment of sentence affirmed.