J-A08031-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| WILLIAM VAUGHN HOOPER, | : | |
| | : | |
| Appellant | : | No. 1473 MDA 2014 |

Appeal from the Judgment of Sentence Entered March 27, 2014
in the Court of Common Pleas of Huntingdon County,
Criminal Division, at No(s): CP-31-CR-0000006-2013

BEFORE:    SHOGAN, WECHT, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:                **FILED MAY 29, 2015**

William Vaughn Hooper (Appellant) appeals from the judgment of sentence entered following his convictions for simple assault and terroristic threats.[1]  We affirm.

The trial court set forth the relevant factual history of this case as follows.

> [O]n December 27, 2012, around 4:00 p.m., Appellant and his wife, Carol, engaged in a dispute at their residence located at 10271 Fairgrounds Road, Huntingdon, Pennsylvania. The event that precipitated the fight was Mrs. Hooper's belief that her husband had operated his vehicle while intoxicated with her granddaughter as a passenger. At their home, Mrs. Hooper testified, she told him to get out because she had had enough. He grabbed ahold of the back of her hair, she said, and yanked it down, and then grabbed her by the back of her neck. He kept trying to push her head down toward the sink, she said; and kept drawing his fist back saying he was going to hit her. Also,

---

[1] 18 Pa.C.S. §§ 2701(a)(1) and 2706(a)(1), respectively.

*Retired Senior Judge assigned to the Superior Court.

she testified, he told her he was going to burn the house down. He never hit her, she said, but the event aggravated existing medical conditions and caused her pain. Her granddaughter, she testified, was frightened by the fight.

Sgt. Brian Ianuzzi and Trooper Bradley Clark of the Pennsylvania State Police were witnesses. Both men reported that both Mrs. Hooper and her granddaughter Madison were visibly upset, and both men opined that [Appellant] was very drunk. Sgt. Ianuzzi testified there were visible marks on Mrs. Hooper's shoulder which he photographed.

Trial Court Opinion, 10/3/2014, at 3-4.

This matter proceeded to a jury trial, following which Appellant was convicted of the aforementioned charges. On March 27, 2014, Appellant was sentenced to an aggregate term of 9 to 23 months' incarceration. Appellant timely filed a post-sentence motion, which was denied by operation of law on October 20, 2014. This timely appeal followed. Both Appellant and the trial court complied with the mandates of Pa.R.A.P. 1925.

Appellant raises four issues on appeal.

1. Was the evidence presented at trial sufficient to convict [Appellant] of the offenses charged?

2. Was [Appellant's] right to the assistance of counsel at trial respected, when he was twice provided court-appointed counsel for jury selection, but then denied a court-appointed attorney for the trial itself, even though he demonstrated his inability to pay?

3. Was [Appellant's] right to confront the witnesses presented against him at trial respected, when he was not provided with counsel to assist him in cross-examination?

4. Was [Appellant] provided an adequate opportunity to attend his trial, when he was removed from the courtroom partway through trial?

J-A08031-15

Appellant's Brief at 5-6.

Appellant first challenges the sufficiency of the evidence presented at trial, arguing that the Commonwealth failed to prove that he acted with the requisite *mens rea* for each of the aforementioned offenses. Appellant's Brief at 12-15.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Knox*, 50 A.3d 749, 754 (Pa. Super. 2012) (quoting *Commonwealth v. Brown*, 23 A.3d 544, 559–60 (Pa. Super. 2011) (*en banc*)).

Appellant was convicted of simple assault and terroristic threats. Under the Crimes Code, "[a] person is guilty of [simple] assault if he: (1) attempts to cause or intentionally, knowingly or recklessly causes bodily

- 3 -

injury to another…." 18 Pa.C.S. § 2701(a)(1).  18 Pa.C.S. § 2301 defines

"bodily injury" as "[i]mpairment of physical condition or substantial pain."

Our Crimes Code defines the offense of terroristic threats, in pertinent

part, as follows:

**§ 2706. Terroristic threats**

**(a) Offense defined.—**A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to:

(1) commit any crime of violence with intent to terrorize another.

18 Pa.C.S. § 2706(a)(1). "Neither the ability to carry out the threat, nor a

belief by the person threatened that the threat will be carried out, is an

element of the offense." ***Commonwealth v. Reynolds***, 835 A.2d 720, 730

(Pa. Super. 2003) (quoting ***In re J.H.***, 797 A.2d 260, 262 (Pa. Super.

2002)).

> Rather, the harm sought to be prevented by the statute is the psychological distress that follows from an invasion of another's sense of personal security. Section 2706 is not meant to penalize mere spur-of-the-moment threats which result from anger. ***In re J.H.***, 797 A.2d at 262-63. ***See also*** [***Commonwealth v. Tizer***, 684 A.2d 597, 600 (Pa. Super. 1996)] (indicating statute is not meant to penalize spur-of-the-moment threats arising out of anger during a dispute); ***Commonwealth v. Anneski***, 362 Pa. Super. 580, 525 A.2d 373 (1987) (concluding where defendant threatened to retrieve and use gun against her neighbor during argument, in which the neighbor also threatened to run over defendant's children with her car, did not constitute a terroristic threat because circumstances of the exchange suggested spur-of-the-moment threat made during heated exchange and defendant lacked a settled purpose to terrorize her neighbor). **However, [b]eing angry does not**

> **render a person incapable of forming the intent to terrorize. [T]his Court must consider the totality of circumstances to determine whether the threat was a result of a heated verbal exchange or confrontation.**

*Reynolds,* at 730 (some internal citations and quotation marks omitted) (emphasis added).

The record reveals that the Commonwealth presented sufficient evidence to sustain Appellant's convictions. The victim in this matter, Appellant's former wife, testified that she confronted Appellant after observing him driving erratically with her granddaughter in the car. N.T., 1/22/2014, at 17-19. She testified that Appellant was exhibiting signs of intoxication, although he denied consuming alcohol that day. *Id.* at 19. The argument escalated, with Appellant calling the victim derogatory names and the victim ordering Appellant to leave the house. *Id.* at 21-22. Appellant then rushed at the victim, grabbed the back of her hair and the back of her neck, and attempted to push her head towards the kitchen sink. *Id.* at 22. The victim testified that Appellant was screaming at her and "drawing his fist back and saying he was going to hit [her]." *Id.* The victim testified that she suffers from various ailments and Appellant's use of force on her head and neck caused her substantial pain. *Id.* at 23-24, 26-27. After releasing the victim, Appellant sat in a recliner, placed a lit Zippo lighter on the carpeted floor next to him, and informed the victim he was going to burn the house down with the victim and her granddaughter inside. *Id.* at 24-25. The

- 5 -

police arrived on scene shortly thereafter. At trial, the responding officers' testimony corroborated the victim's injuries, as well as Appellant's angry state and visible intoxication. *Id.* at 31-38.

Instantly, Appellant argues that the trial court erred in its determination because he was "distraught [over his wife's perceived infidelity] and expressing his anger and frustration." Appellant's Brief at 15. Appellant goes on to argue that his behavior was "more likely to hurt himself" and "although he may actually have caused her harm, and may actually have caused her fear" his actions were not accompanied by a culpable mental state as required by the statute. *Id.*

We are not persuaded by Appellant's argument. Appellant's act of rushing the victim, grabbing her hair, head and neck and attempting to force it onto a hard surface is sufficient for a jury to find him guilty of simple assault. The victim was Appellant's wife. He was obviously aware of her various ailments, not to mention it is patently obvious that use of force to another person's head is likely to cause impairment or injury.

With respect to his terroristic threats conviction, as discussed above, even were we to consider Appellant's comments as those made in the heat of anger, being angry does not render a person incapable of forming the intent to terrorize. *Reynolds*, 835 A.2d at 730. Moreover, the victim testified that she took Appellant's threats to punch her and burn the home down seriously. Viewed in the light most favorable to the Commonwealth,

the evidence is sufficient to prove that Appellant acted with the requisite intent to terrorize. Accordingly, for all of the foregoing reasons, we find that Appellant's first claim is without merit.

In Appellant's second issue, he claims that he was denied his constitutional right to counsel. Appellant's Brief at 16-19. This issue raises a pure question of law. Accordingly, we apply a *de novo* standard of review, and our scope of review is plenary. ***Commonwealth v. Worthy***, 957 A.2d 720, 724 (Pa. 2008).

It is undisputed that Appellant was unrepresented at trial. The issue presented is whether he waived or forfeited his right to counsel. Because there is no record of the trial court engaging in a colloquy to ensure Appellant had knowingly, voluntarily, and intelligently waived his right to counsel, we cannot find waiver. Pa.R.Crim.P. 121. However, as our Supreme Court has held, Rule 121 and the colloquy requirements do not apply to situations in which forfeiture is found. ***See Commonwealth v. Lucarelli***, 971 A.2d 1173 (Pa. 2009).

After his arrest, Appellant's bail was set at $25,000. By virtue of his incarceration, the Office of the Public Defender (OPD) was appointed to represent Appellant at his preliminary hearing on January 8, 2013. Appellant waived his preliminary hearing that day in exchange for a bail modification and was released from the Huntington County Jail on January 8, 2013. Appellant was still represented by the OPD at his formal arraignment

on February 14, 2013. However, Appellant appeared for his second scheduled jury selection date without an attorney. At that time, the following exchange took place.

> THE COURT: All right, [Appellant], you want to come up and sit down? I have some questions I want to ask you. Obviously you are here without an attorney.
>
> [APPELLANT]: Public Defender decided he didn't want to have my case for some reason.
>
> THE COURT: That's not what I recall and I just spoke to the Public Defender. My recollection and his recollection is that you were asked to complete a new application [to determine if you qualified financially for the services of the OPD] and refused to do that.
>
> [APPELLANT]: I didn't refuse to do that. I didn't receive the applications till [*sic*] actually I got out from the courtroom and got home. Because I got home from -- that morning from out of town.
>
> THE COURT: Were you working at the time?
>
> [APPELLANT]: I was out of town. I wasn't working.
>
> THE COURT: Didn't -- [the Public Defender's] recollection is you told him you were losing money by being here.
>
> [APPELLANT]: Yes, I had a job to do that morning, yes, but I was out of town.
>
> THE COURT: Did you receive an application for the [OPD]?
>
> [APPELLANT]: After I got home that day because I just got --
>
> THE COURT: Did you complete it?
>
> [APPELLANT]: No. I didn't have time. I had been here in court.
>
> THE COURT: But when you got home did you ever complete --

[APPELLANT]: When I got home from court, no, because he told me he wasn't going to be my attorney.

N.T., 11/21/2013, at 1-2. The trial court confirmed that Appellant wished to proceed with court-appointed counsel, whereupon the court provided Appellant with a new application for the OPD. A brief recess was taken to allow Appellant to complete the application.

THE COURT: All right, [Appellant], your application has been reviewed by the Public Defender and me and it was clear to me before I showed it to the Public Defender that you don't qualify for a [p]ublic [d]efender. If your annual income in the past 12 months, which you say is $18,000 --

[APPELLANT]: That's a guess.

THE COURT: Well, the guidelines say for us to appoint counsel your income must be 10,000 a year or less. You're indicating income almost double.

*Id.* at 3. Appellant went on to indicate that he was a mechanic, had no assets, and his weekly net income varied depending on the work he had done that week, although he had not worked since August of 2013. *Id.* The Public Defender indicated that he sent Appellant two applications, in July and August, and called and left messages for Appellant regarding his representation. *Id.* at 7-8.

Appellant acknowledged receiving both applications, but maintained that he had been out of town and did not fill them out. *Id.* at 5, 8. Nonetheless, Appellant reiterated his desire for the court to appoint counsel, and repeatedly indicated that the $18,000 figure was pure speculation. *Id.*

- 9 -

At the end of the hearing, the matter was continued to allow Appellant an opportunity to provide to the OPD his tax returns for 2011 and 2012 and any other records that would help the OPD determine Appellant's eligibility for counsel. Trial Court Order, 11/21/2013. The order directed Appellant to appear for jury selection on January 13, 2014 with a public defender, if he so qualified, or with privately-retained counsel. ***Id.***

On January 22, 2014, the matter proceeded to trial. Because he did not qualify for a public defender,[2] Appellant was required to hire private counsel to represent him at trial. N.T., 1/22/2014, at 9. He did not do so. Accordingly, at trial, Appellant represented himself.[3] However, Appellant refused to participate in cross-examination or by calling witnesses on his behalf because he was without counsel. ***Id.*** at 13, 27, 33-34, 38, 39.

Appellant argues that he was denied counsel despite presenting proof of his indigence. In fact, as the record demonstrates, Appellant was unable to obtain representation because he did not meet the OPD guidelines. In ***Lucarelli***, our Supreme Court held that "where a defendant's course of conduct demonstrates his or her intention not to seek representation by

---

[2] Attached to Appellant's brief is a letter from the OPD, dated December 6, 2013, indicating that Appellant's income exceeded the guidelines and he was ineligible for representation by that office.

[3] The record indicates that Appellant had an attorney assist him during jury selection. It is unclear whether this attorney was from the OPD, but it is evident that his or her counsel extended only to jury selection.

private counsel, despite having the opportunity and financial wherewithal to do so, a determination that the defendant be required to proceed *pro se* is mandated because that defendant has forfeited the right to counsel." **Id.** at 1179. Instantly, because Appellant did not qualify for the assistance of the OPD, it was incumbent upon him to hire private counsel.[4] He failed to do so.

---

[4] This Court certainly does not consider an annual income of $18,000 to be "well-off". However, the determination of indigence and qualification for representation is at the discretion of the OPD. The Public Defender Act provides as follows.

> (a) The public defender shall be responsible for furnishing legal counsel, in the following types of cases, to any person who, for lack of sufficient funds, is unable to obtain legal counsel[.]...
>
> (b) The public defender, after being satisfied of the person's inability to procure sufficient funds to obtain legal counsel to represent him, shall provide such counsel.
>
> Every person who requests legal counsel shall sign an affidavit that he is unable to procure sufficient funds to obtain legal counsel to represent him and shall provide, under oath, such other information as may be required by the court, the public defender, or the Pennsylvania Rules of Criminal Procedure.

16 Pa.C.S. § 9960.6. The process for obtaining representation by the OPD was explained to Appellant multiple times before trial. The record demonstrates that Appellant was given at least four opportunities to address that issue with the OPD. By his own admission, Appellant ignored the first two letters from the OPD, as well as numerous phone calls. Despite receiving the letters and requests for information, Appellant came to court the day of his second trial listing without the necessary information and, after being given a third opportunity to complete an application for the OPD, he wrote down a "guess he pulled from thin air." N.T., 11/21/2013, at 7. After obtaining another postponement, and learning that he still did not qualify for a public defender, Appellant appeared in court without privately-retained counsel. Appellant has clearly forfeited his right to counsel under

Accordingly, we find no error in the trial court's determination that he had forfeited his right to counsel. ***See Commonwealth v. Coleman***, 905 A.2d 1003 (Pa. Super. 2006) (holding that there was no abuse of discretion where Coleman, who had the financial means to retain counsel, appeared without counsel on several occasions after having dismissed them or engaged in conduct forcing them to withdraw); ***Commonwealth v. Wentz***, 421 A.2d 796 (Pa. Super. 1980) (holding that there was no abuse of discretion where Wentz, who was not eligible for court-appointed counsel, appeared without counsel at his arraignment.).

In his third issue, Appellant contends that, because he was not provided with counsel, his right to confront witnesses presented against him was violated. Appellant's Brief at 19.

> Under both the United States Constitution and the Pennsylvania Constitution, the right to confrontation specifically guarantees a person accused of a crime the right "to be confronted with the witnesses against him." United States Constitution, Sixth Amendment; Pennsylvania Constitution, Art. I, § 9. As the United States Supreme Court has explained, the right to confrontation is basically a trial right, and includes both the opportunity for cross-examination of the witnesses and the occasion for the jury to consider the demeanor of the witnesses. The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact.

---

these facts. While it was within the trial court's discretion to appoint counsel, the court declined to do so and we discern no abuse of discretion.

***Commonwealth v. Williams***, 84 A.3d 680, 684 (Pa. 2014) (some citations omitted).

Appellant's claim is belied by the record, which indicates that he was given the opportunity to cross-examine the Commonwealth's witnesses but refused because the court did not provide him an attorney. ***See e.g.***, N.T., 1/22/2014, at 27 ("THE COURT: [Appellant], do you want to ask any questions [of the victim]?; [APPELLANT]: I'm not participating because I do not have counsel."). As we have discerned no abuse of discretion in the trial court's decision not to appoint counsel, Appellant's claim does not afford him relief.

Finally, Appellant argues that he was denied his right to a fair trial because he was forcibly removed from the courtroom prior to the jury charge. Appellant's Brief at 20-22.

> Article I, § 9 of the Pennsylvania Constitution and Pennsylvania Rule of Criminal Procedure 602 guarantee the right of an accused to be present in the courtroom at every stage of a criminal trial. Such right, however, is not absolute. A defendant has a due process right to be present in his own person whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge. Accordingly, the defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure.

***Commonwealth v. Tharp***, 101 A.3d 736, 762 (Pa. 2014) (citations and quotations omitted). However, a defendant may forfeit the right to be present by persisting in disruptive behavior threatening the court's ability to

conduct an appropriate hearing. ***Commonwealth v. Basemore***, 582 A.2d 861, 867 (Pa. 1990). The court must first warn the disruptive defendant that continued misbehavior will result in the defendant's removal from the courtroom and in the continuation of the proceedings in the defendant's absence. ***Commonwealth v. Abu- Jamal***, 720 A.2d 79, 109 (Pa. 1998). Thus, the defendant must be made to understand that misbehavior, while resulting in the defendant's expulsion from the hearing, will not cause the hearing to cease but will cause it to proceed with the defendant absent therefrom. ***Id.*** If the defendant continues disrupting the proceedings after an appropriate warning, the court may then remove the defendant and complete the proceedings. ***Id.*** The defendant can regain the right to be present by demonstrating a willingness to act consistently with appropriate courtroom decorum. ***Basemore***, 582 A.2d at 867. ***See also Commonwealth v. Howard***, 471 A.2d 1239, 1243 (Pa. Super. 1984) (stating that the trial court possesses the authority to remove the accused from the courtroom when his/her conduct disrupts the court's ability to proceed in an orderly manner and to conduct a civilized determination of his/her guilt or innocence).

During the course of his brief trial, Appellant made repeated disruptive outbursts and interjections. ***See*** N.T., 1/22/2014, at 13, 32, 40, 41. The trial court informed Appellant that he would be removed from the courtroom if his outbursts continued. ***Id.*** When given the opportunity to make a

closing argument to the jury, Appellant argued with the judge regarding his lack of counsel and was removed from the courtroom before the jury charge. *Id.* at 41-43. Based on the persistent vexatious conduct of Appellant during his one-day trial, we discern no error in the court's decision to remove him from the courtroom prior to the jury charge.

Accordingly, for all of the foregoing reasons, we affirm Appellant's judgment of sentence. Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 5/29/2015