J-S25016-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JAYQUON MASSEY | |
| Appellant | No. 1752 WDA 2014 |

Appeal from the Order Entered October 10, 2014
In the Court of Common Pleas of Allegheny County
Criminal Division at No: CP-02-CR-0003771-2008

BEFORE:  BENDER, P.J.E., STABILE, and PLATT,[*] JJ.

MEMORANDUM BY STABILE, J.:                    **FILED JUNE 30, 2015**

Appellant, Jayquon Massey, appeals from the October 10, 2014 order dismissing his petition pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-46.  We affirm.

On October 23, 2008, a jury found Appellant guilty of first-degree murder, recklessly endangering another person ("REAP"), and carrying a firearm without a license.[1]  On December 19, 2008, the trial court imposed life in prison without parole for murder, a concurrent two to four years of incarceration for the firearm offense and no further penalty for REAP.  This

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1]  18 Pa.C.S.A. §§ 2502(a), 2705, and 6106(a)(1), respectively.

Court affirmed the judgment of sentence on February 24, 2011, and our Supreme Court denied allowance of appeal on October 14, 2011.

Appellant filed a timely *pro se* PCRA petition on September 12, 2012. Appointed counsel filed an amended petition on Appellant's behalf on March 14, 2013. On September 22, 2014, the PCRA court issued its notice of intent to dismiss the petition without a hearing, per Pa.R.Crim.P. 907. The PCRA court denied relief on October 10, 2014, and this timely appeal followed.

Appellant raises one issue for our review:

> Did the [PCRA] court err in denying Appellant's PCRA petition since trial counsel was ineffective for specifically asking the trial court not to give a jury instruction on voluntary manslaughter, resulting in the jury being precluded from considering imperfect self-defense?

Appellant's Brief at 3.

On review, we must determine whether the record supports the PCRA court's findings of fact, and whether the court erred in its legal conclusions. ***Commonwealth v. Payne***, 794 A.2d 902, 905 (Pa. Super. 2002), *appeal denied*, 808 A.2d 571 (Pa. 2002).

> The right to an evidentiary hearing on a post-conviction petition is not absolute. A PCRA court may decline to hold a hearing if the petitioner's claim is patently frivolous and is without a trace of support in either the record or from other evidence. A reviewing court on appeal must examine each of the issues raised in the PCRA petition in light of the record in order to determine whether the PCRA court erred in concluding that there were no genuine issues of material fact and denying relief without an evidentiary hearing.

- 2 -

*Id.* at 906 (quoting **Commonwealth v. Jordan**, 772 A.2d 1011, 1014 (Pa. Super. 2001)).

With the instant petition, Appellant sought to plead and prove, pursuant to § 9543(a)(2)(ii) that his trial counsel rendered ineffective assistance. Counsel is presumed effective, and the petitioner bears the burden of proving otherwise. **Commonwealth v. Ligons**, 971 A.2d 1125, 1137 (Pa. 2009). To prevail, the petitioner must prove: "(1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance." *Id.*

The trial court summarized the pertinent facts:

> The incident in question occurred on November 21, 2007, at approximately 6:15 PM at a bus stop on the north side area of the city of Pittsburgh. The victim was struck in the neck by a bullet fired by the defendant, while she and her boyfriend were walking from the bus stop with their Thanksgiving groceries. [Appellant] had fired at a burgundy SUV that had driven by. The general facts are as follows: [Appellant] would visit his north side neighborhood on a daily basis because his girlfriend at the time had lived there. [Appellant] knew the victim as well as the victim's children, given his testimony that the victim was his cousins' mom. [Appellant] on the day prior to the incident had been in this neighborhood with a friend and was robbed at gunpoint by unidentified persons in a burgundy SUV. The following evening (November 21, 2007) the defendant was again in this north side neighborhood. The victim's 14-year-old son had observed and encountered [Appellant] prior to the incident. He testified that he had seen [Appellant] in the neighborhood every day, and on the night of the incident he observed a burgundy Escalade which he had seen the last several days in the area. He testified that the driver of the burgundy Escalade

at some point got out of the vehicle and was taunting [Appellant].  The 14-year-old also testified that after the vehicle had passed, [Appellant] was in the middle of the street trying to shoot at the vehicle.  The witness testified that the defendant had said his gun had jammed and did not discharge.  At one point, [Appellant] asked to use his cell phone.  [Appellant] denied the allegations that he attempted to shoot at the vehicle while standing in the middle of the street or that the gun had jammed.  Subsequently, when the vehicle passed again [Appellant] fired shots that ultimately struck the innocent victim across the street.  Various witnesses testified that they heard multiple shots fired.  Their recollections varied from four to six shots.  The Pittsburgh Police recovered two .38 caliber shell casings from where [Appellant] was believed to be standing in a grassy area.  The defense contended that the victim's son had given him the gun, and [Appellant] had initially pointed it at the SUV in an attempt to scare them away.  When the vehicle returned, [Appellant] testified that an arm protruded from the vehicle with a gun pointed at him.  At that time [Appellant] shot twice.  No other witnesses observed the arm with a gun from the Escalade window.

Trial Court Opinion, 7/30/09, at 2-4.

Appellant argues his counsel was ineffective in asking the trial court not to instruct the jury on voluntary manslaughter, leaving the jury to choose among first-degree murder, third-degree murder, involuntary manslaughter, or an acquittal.  Under a voluntary manslaughter conviction, Appellant—only 18 years old at the time of the offense—could not have been sentenced to life imprisonment.[2]  The Pennsylvania Crimes Code defines voluntary manslaughter as follows:

_____

[2]  During the colloquy on jury instructions, the trial court and prosecutor were somewhat incredulous at Appellant's counsel's decision to ask for a charge on involuntary manslaughter, which involves reckless or grossly

*(Footnote Continued Next Page)*

- 4 -

§ 2503. Voluntary manslaughter.

(a) General rule. --A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:

(1) the individual killed; or

(2) another whom the actor endeavors to kill, but he negligently or accidentally causes the death of the individual killed.

(b) Unreasonable belief killing justifiable. --A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title (relating to general principles of justification), but his belief is unreasonable.

18 Pa.C.S.A. § 2503.[3]

Unreasonable belief voluntary manslaughter, under § 2503(b), is commonly known as "imperfect self-defense." *Commonwealth v. Rivera*, 983 A.2d 1211, 1223 (Pa. 2009). When a defendant produces evidence of self-defense, the Commonwealth must disprove self-defense beyond a reasonable doubt. *Id.* at 1221 (citing *Commonwealth v. Torres*, 766 A.2d

_(Footnote Continued)_ ————————————

negligent conduct (18 Pa.C.S.A. § 2504(a)) and not on voluntary manslaughter. The prosecutor and trial judge believed the latter and not the former to be applicable, given Appellant's intentional conduct and his justification defense. Nonetheless, given the circumstances of this case as explained in the main text, we do not believe Appellant is eligible for collateral relief.

[3] Appellant does not argue that he committed the crime under a sudden and intense passion, per § 2503(a).

342, 345 (Pa. 2001)). The Commonwealth cannot sustain that burden based on the jury's disbelief of the defendant's testimony. *Id.*

Section 505 of the Crimes Code governs justifiable use of force in self-defense. Section 505(b) defines relevant limits on the use of deadly force in self-defense. It provides in pertinent part as follows:

> (2) The use of deadly force is not justifiable under this section unless the actor believes that such force is necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat; nor is it justifiable if:
>
> > (i) the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter; or
> >
> > (ii) the actor knows that he can avoid the necessity of using such force with complete safety by retreating or surrendering possession of a thing to a person asserting a claim of right thereto or by complying with a demand that he abstain from any action which he has no duty to take[.]

18 Pa.C.S.A. § 505(b).[4] These factors apply where the defendant asserts imperfect self-defense under § 2503(b). "[The imperfect self-defense claim] is imperfect in only one respect—an unreasonable rather than a reasonable belief that deadly force was required to save the actor's life. All other principles of justification under 18 Pa.C.S.[A.] § 505 must have been met

_____

[4] We have quoted the version of the statute in effect at the time of Appellant's offense. We observe that the "stand your ground" law, under current § 505(b)(2.3), post-dates Appellant's offense and would have no application here because Appellant was not lawfully in possession of his firearm.

before [the defendant] would have been entitled to jury instructions on unreasonable belief voluntary manslaughter. ***Commonwealth v. Tilley***, 595 A.2d 575, 582 (Pa. 1991). "[A] trial court shall charge on this type of voluntary manslaughter only when requested, where that sub-class of the offense of voluntary manslaughter has been made an issue in the case and the trial evidence could reasonably support a verdict on it." ***Commonwealth v. Carter***, 466 A.2d 1328, 1329 (Pa. 1983). Thus, where the defendant is the aggressor or has an opportunity to retreat with complete safety, § 2503(b) is inapplicable.

The instant record reflects that Appellant had at least four encounters with the burgundy SUV on the day of the murder. In the first, two of the vehicle's occupants got out and taunted Appellant as he was sitting outside of a barbershop. N.T. Trial, 10/20/08, at 137-44. Appellant, who apparently was unarmed at the time, did not respond to the taunting and walked inside the barbershop. ***Id.*** at 144. Later that day, the SUV drove past Appellant again. Appellant, now armed, attempted to shoot at the SUV despite no apparent threat from the vehicle, but his gun failed to discharge. ***Id.*** at 149-57, 217-20. More specifically, Appellant walked into the middle of the street and attempted to shoot at the back of the vehicle after it passed him **and was driving away from him**. ***Id.*** at 152. The vehicle was approximately 20 feet past Appellant when he attempted to open fire. ***Id.*** at 155. Appellant was donning a black ski mask during this attempted

shooting. ***Id.*** at 156. The witness heard Appellant complain that his gun had jammed. ***Id.*** at 154, 157. After this incident, Appellant entered one of the houses on the street. ***Id.*** at 223.

Later, Appellant was once again on the sidewalk, and the SUV approached Appellant a third time. The eyewitness fled and gave no specifics, other than one person emerged from the SUV. ***Id.*** at 163-64. In the final encounter, Appellant opened fire, missing the SUV but shooting the victim in the neck, killing her. ***Id.*** at 170-72. No other witness corroborated Appellant's account of an arm reaching out the window of the SUV during this encounter.

Appellant testified that he feared the occupants of the burgundy SUV because he and his girlfriend were robbed at gunpoint in the same neighborhood the day before. N.T. Trial, 10/22/08, at 465-72. Appellant did not report the robbery to the police or to the proprietors of nearby businesses. ***Id.*** at 476, 550. Immediately after the robbery, Appellant saw the dark red SUV drive past again. Appellant returned to the neighborhood the next day to visit his girlfriend, which he did every day. ***Id.*** at 464, 478. Appellant's girlfriend's house was not in the immediate vicinity of the scene of the alleged robbery and Appellant's encounters with the SUV the next day. ***Id.*** at 556-57. Eventually, Appellant's girlfriend left with her friend and Appellant remained in the neighborhood alone. ***Id.*** at 482. Appellant testified he retreated into a barbershop after his first encounter with the SUV

on the day of the shooting. *Id.* at 491. One of the vehicle's occupants followed him into the barbershop, but the barber asked the occupant to leave. *Id.* at 495. Appellant stated he remained in the barbershop for a period of time but was unable to leave the neighborhood because the barbershop did not have a back door. *Id.* at 498-99. Upon leaving the barbershop, Appellant called several friends in attempt to obtain transportation out of the neighborhood. *Id.* at 501. One of the friends met Appellant outside the barbershop and handed him a gun wrapped in a white t-shirt and then left. *Id.* at 502-03.

Appellant testified that when he saw the SUV the second time he pointed the gun to scare the vehicle's occupants but did not attempt to shoot. *Id.* at 508-09. Appellant ran down the street to the home of "Gina," a woman he knew. The occupant who answered the door did not allow him to enter. *Id.* at 509-10. Gina's home was only several houses away from the home of Appellant's friend where Appellant spent time every day for a period of months. *Id.* at 580-81. Appellant hid behind some porch furniture, in front of Gina's home but the occupant of the home asked him to leave. *Id.* at 513.

Just before the shooting, Appellant testified he was behind some dead bushes. *Id.* at 521. Appellant saw the SUV approaching and he saw an arm protruding out the window pointing a gun at him. *Id.* at 522-23. Appellant then pointed his gun at the SUV and shot twice. *Id.* at 523-24. Appellant

testified the occupant of the SUV fired at him at the same time. *Id.* at 525. Appellant stayed at a friend's girlfriend's house for a week before his arrest. *Id.* at 538-39, 602-04.

On direct appeal, Appellant argued the Commonwealth failed to produce sufficient evidence to disprove self-defense beyond a reasonable doubt. The trial court rejected that argument in its Pa.R.A.P. 1925(a) opinion, noting the Appellant's first, unsuccessful attempt to open fire on the SUV and Appellant's failure to retreat. Trial Court Opinion, 7/30/09, at 5-6. The trial court noted Appellant had an opportunity to retreat into a nearby fire station. *Id.* at 6. In affirming the trial court on that issue, this Court adopted the trial court's reasoning. *Commonwealth v. Massey*, 608 WDA 2009 (Pa. Super. 2011), unpublished memorandum, at 7.

Under these circumstances, Appellant's assertion of counsel's ineffectiveness fails because Appellant cannot establish prejudice. "To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Commonwealth v. Spotz*, 84 A.3d 294, 312 (Pa. 2014). A jury charge on § 2503(b)—where the record reflects that Appellant was the aggressor and had an opportunity to retreat—could not have changed the outcome of this case. *See Commonwealth v. Isaacman*, 409 A.2d 880, 881 (Pa. Super. 1979) (holding the defendant had a duty to retreat when the decedent left the scene, even if the

defendant believed the decedent would later return and attempt to harm the defendant). The jury found the Commonwealth disproved Appellant's justification defense beyond a reasonable doubt. The factors this Court relied on in affirming the conviction on direct appeal—Appellant's aggression and his failure to retreat—are equally fatal to an imperfect self-defense theory under § 2503(b). In summary, the record reflects that Appellant voluntarily returned to the location where he was allegedly the victim of a robbery one day earlier. He remained in that location after several encounters with a vehicle he believed to be occupied by the perpetrators. He obtained a weapon from a friend and attempted to fire it unsuccessfully— while donning a ski mask—on one occasion prior to the fatal encounter. Given these facts, we do not believe a reasonable probability exists that a voluntary manslaughter instruction would have led to a different result, *i.e.*, conviction for a lesser offense than first-degree murder. Appellant has failed to establish prejudice, and that failure is fatal to his claim. **Ligons**, 971 A.2d at 1137 (noting that a claim of ineffective assistance of counsel will not succeed unless the petitioner pleads and proves all three prongs of the analysis). We discern no legal error in dismissing Appellant's PCRA petition.[5]

---

[5] We are cognizant that the PCRA court dismissed the petition because it believed counsel made a strategically reasonable choice in seeking acquittal based on the justification defense rather than a potential compromise verdict resulting in a conviction for voluntary manslaughter. In support of its holding, the PCRA court cites **Commonwealth v. Sullivan**, 299 A.2d 608

*(Footnote Continued Next Page)*

Order affirmed.

President Judge Emeritus Bender joins the memorandum.

Judge Platt concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/30/2015

_(Footnote Continued)_ ────────────────

(Pa. 1973), wherein the Supreme Court held that the decision to forego a given jury charge is "one of the tactical decisions exclusively within the province of counsel."  **Id.** at 610.  Thus, counsel was not ineffective for foregoing a voluntary manslaughter jury charge in hope of obtaining an acquittal based on self-defense.  **Id.**  We need not express an opinion on counsel's strategic basis, as Appellant's failure to establish prejudice is fatal to his claim.  We are free to affirm the PCRA court on any valid basis. **Commonwealth v. Janda**, 14 A.3d 147, 161 n.8 (Pa. Super. 2011).